Harold Carlos BAKER and wife, Wyvo-
nia Baker, Plaintiffs-Appellants,

v.

Clem D. SEAL, Hancock County High-
way Commissioner, Exchange Mutual
Insurance Company, and Hancock
County, Tennessee, Defendants-Appel-
lees.

Court of Appeals of Tennessee,
Eastern Section.

Aug. 14, 1984.

Permission to Appeal Denied by
Supreme Court Dec. 17, 1984.

Thomas D. Shelburne, Rogersville, and John P. Chiles, Kingsport, for plaintiffs-appellants.

Robert W. Freeman, Sneedville, W. Wayne Leroy, Nashville, and Beverly Sullivan, Morristown, for defendants-appellees.

## OPINION

SANDERS, Judge.

The Plaintiffs have appealed from a judgment of the circuit court dismissing their complaint for failure to state a claim upon which relief could be granted.

The Plaintiff-Appellant, Harold Carlos Baker, was operating his farm tractor in a northerly direction on Fox Branch Road in Hancock County when he met an automobile traveling in a southerly direction. Fox Branch Road is a narrow, two-lane road. Upon meeting the automobile, Plaintiff pulled the tractor to his right-hand side of the road and the right rear wheel struck a large rock, causing him to lose control of the tractor. The tractor went over a steep creek embankment and overturned, resulting in serious personal injuries to the Plaintiff. He filed suit in the circuit court against Defendants-Appellees, Clem D. Seal, Highway Commissioner of Hancock County, Exchange Mutual Insurance Company as the bonding company of Commissioner Seal, and Hancock County for his personal injuries. Plaintiff-Appellant, Wyvonia Baker, joined in the complaint seeking damages for loss of consortium of her husband.

The complaint alleges that, because of dirt, debris, and rocks from previous rockslides due to heavy rains and flooding in the area, the roadway was not wide enough for two motor vehicles to pass in safety. Because of this condition, the Plaintiff was forced to the edge of the road, whereupon the tractor's rear right tire struck a large rock in the roadway, causing Plaintiff to lose control of the tractor.

The gravamen of the Plaintiffs' complaint is that both Hancock County and Mr. Seal negligently failed to maintain the road in a reasonably safe condition. More particularly, the complaint asserts that the Defendants were negligent (1) in failing to provide the road's users with a reasonably safe roadway upon which to drive a motor vehicle; (2) in failing adequately to inspect the road so as to detect the dangerous condition thereof and to make the necessary repairs; (3) in failing to warn, caution, or alert the Plaintiffs and others by means of markers, flashing lights, barracades, or otherwise, of the dangerous condition of the road; and (4) in failing to correct the dangerous or deceptive trap that existed on the road.

Defendant Hancock County and Defendant Seal each filed a motion for summary judgment on the grounds the Plaintiffs had failed to give the 120-day notice required under T.C.A. § 23-3314. Defendant Exchange Mutual Insurance Company filed a Rule 12, T.R.C.P., motion to dismiss the action for failure to state a claim upon which relief could be granted.

The court initially overruled the motions of both Hancock County and Mutual Exchange but, upon a subsequent hearing of Defendant Seal's motion, the court changed his position, holding that T.C.A. § 29-20-203(a) of Governmental Tort Liability Act was not sufficiently broad to impose liability upon Hancock County or the Highway Commissioner, and dismissed the case.

The Plaintiffs have appealed, insisting the court was in error.

T.C.A. § 29-20-203(a) provides:

"Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity."

The trial court, in dismissing the complaint, expressly relied upon an opinion which this court had filed of *Fretwell v. Chaffin.* In that case it was held that T.C.A. § 29-20-203(a) was not sufficiently broad to impose liability on the City of Knoxville, for failure to properly maintain a stop sign. Since the filing of that opinion and after the trial court's determination of the case at bar, the Supreme Court reversed the holding of this court in the *Fretwell* case and held that T.C.A. § 29-20-203(a) was broad enough to impose liability for failure to maintain a stop sign. *See Fretwell v. Chaffin,* 652 S.W.2d 755 (Tenn.1983). In *Fretwell* the court said:

"We are of the opinion that the statutory exception to governmental immunity quoted above is applicable here and that it does embrace street signs and traffic control devices within its terms, *as well as the actual surface conditions of streets* and sidewalks." (Emphasis ours.) *Id.* at 757.

■ Under the express language used by the Supreme Court, it appears that the failure of a county to maintain the surface conditions of a county road in a proper, reasonably safe fashion can lead to liability being imposed upon the county under T.C.A. § 29-20-203(a).

■ Additionally, in *Fretwell* the Court made a distinction between the entity's discretionary decision as to whether or not to install traffic controls in the first place and its mandatory obligation, once the controls are installed, to maintain them adequately. Likewise, in the case at bar, Hancock County may have had the discretion initially whether or not to construct Fox Branch Road; however, once the road was constructed, the county obligated itself to maintain the road's surface in a reasonably safe condition.

We, accordingly, find it was error for the trial court to dismiss the case as to Hancock County, but other issues require further consideration as to the Defendants Seal and Exchange Mutual.

In its brief Exchange Mutual argues that, even if § 29-20-203(a) of the Tennessee Governmental Tort Liability Act applies under the facts of this case, nevertheless, there is no specific statutory duty upon Defendant Seal, as Hancock County Highway Commissioner, to remove a rock from a county roadway and, therefore, Mr. Seal or Exchange Mutual cannot be held liable under the facts of the case.

T.C.A. § 8-19-301 sets forth the statutory framework governing bonds issued to public officers, including highway commissioners. In pertinent part, the statute provides:

"Every official bond executed under this code is obligatory on the principal and sureties thereon:"

\*   \*   \*   \*   \*   \*

"(3) For the use and benefit of every person who is insured, as well by any wrongful act committed under color of his office as by the failure to perform, or the improper or neglectful performance,

*of the duties imposed by law."* (Emphasis ours.)

Exchange Mutual takes the position that under this section, unless the Highway Commissioner failed to perform a duty imposed by law, Mr. Baker cannot bring himself within the protection of the bond. It insists, "The only arguable statute germaine to the instant case is T.C.A. 54–7–201."

T.C.A. § 54–7–201 provides, in part:

"The chief administrative officer is authorized to remove or cause to be removed any fence, gate, or other obstruction from the roads, bridges and ditches of the county and to clean out and clear all fences and ditches along or adjacent to the country roads."

Exchange Mutual contends that such provision imposes no statutory duty upon the Highway Commissioner since "the statute merely authorizes, and does not [mandate], the chief administrative officer to remove such obstructions."

It is often difficult for courts to determine whether a statutory provision is to be construed as permissive or mandatory. It has been stated, generally, that:

"The intention of the legislature as to the mandatory or directory nature of a particular statutory provision is determined primarily from the language thereof. Words or phrases which are generally regarded as making a provision mandatory include 'shall,' and 'must.' On the other hand, a provision couched in permissive terms is generally regarded as directory or discretionary. This is true of the word 'may,' or 'authorizes,' or 'power,' or the phrase 'it is lawful,' especially where the act to be done does not affect third persons and is not clearly beneficial to them, or to the public generally."

73 Am.Jur.2d *Statutes* § 22 (1974).

Nevertheless:

"An imperative obligation is sometimes regarded as imposed by a statutory provision, notwithstanding the fact that it is couched in permissive, directory, or enabling language, such as 'may,' or 'it is lawful,' or 'it shall be lawful,' or 'authority,' or 'power and authority,' or 'authorized and empowered.' This is true where the sense, purpose, or policy of a statute requires it, or where such construction is necessary to give effect to the clear intention of the legislature."

*Id.* at § 24.

At times, Tennessee courts have concluded that words of a permissive nature, such as "may," are to be given a mandatory significance. *Fiske v. Grider,* 171 Tenn. 565, 106 S.W.2d 553 (1937); *Burns v. Duncan,* 23 Tenn.App. 374, 133 S.W.2d 1000 (1940).

In determining whether a provision is permissive or mandatory, "the prime object is to ascertain the legislative intent, from a consideration of the entire statute, its nature, its object, and the consequences that would result from construing it one way or the other...." *Stiner v. Powells Hardware Co.,* 168 Tenn. 99, 75 S.W.2d 406 (1934). *See also Burns, supra,* 23 Tenn. App. at 386, 133 S.W.2d 1000.

The remaining portion of § 54–7–201 states:

"Any person who places or maintains an obstacle or obstruction upon the right-of-way of any county road and refuses to remove such obstacle or obstruction upon direction of the chief administrative officer to do so, is guilty of a misdemeanor.

"It is a misdemeanor to place or cause to be placed any obstruction upon the right-of-way or in the ditches along any county road except that transmission lines, telephone or telegraph lines or poles may be placed on and along the right-of-way of any county road under the direction and with the permission of the chief administrative officer."

Read in its entirety, § 54–7–201 seems merely to grant to the chief administrative officer (here, Mr. Seal) the authority or power to clear and remove private obstructions that impair road traffic. The section does not appear to mandate that the officer remove all such obstructions in or-

der to shield himself from potential liability. We therefore agree with Exchange Mutual to the extent that § 54–7–201 does not impose upon Mr. Seal any mandatory duty, the breach of which would render him or Exchange Mutual liable.

We find one other statutory provision to be germaine to the case at bar. Sec. 54–7–109, which spells out the duties of the chief administrative officer, provides, in pertinent part: .

"The chief administrative officer, except in those counties with elected road commissioners or county councils wherein the general control and authority provided by this paragraph shall remain as is provided by private or general act, shall be the head of the county highway department and shall have general control over the location, relocation, construction, reconstruction, repair and maintenance of the county road systems of his county, including roads designated as county roads under § 13–3–406 .... "

Despite this provision, which grants Mr. Seal "control over the repair and maintenance of the county road system," Exchange Mutual claims that Mr. Seal cannot be held liable for the injury resulting from his failure to remove the rock in question from Fox Branch Road. It takes the position that, where a public official's duty to act is merely discretionary, that official will not be liable for mere nonfeasance absent a showing of malice or willfulness.

In *Hale v. Johnston*, 140 Tenn. 182, 197, 203 S.W. 949 (1918), our Supreme Court stated:

"The authorities seem to be in accord to the effect that public officials, who owe the performance of a ministerial duty to a particular individual, are liable to one injured as the proximate result of their nonfeasance or misfeasance in the performance of such duty. Where the duty is absolute, certain, and imperative, and is simply ministerial, the officer is liable in damages to any one specially injured, either by his omitting to perform the task or by performing it negligently or unskillfully. On the other hand, where

his powers are discretionary, and to be exerted or withheld according to his own judgment, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a willful exercise of them, where no corruption or malice can be imputed to him, and he keeps within the scope of his authority."

(Quoted with approval in *Dunbar v. Strimas*, 632 S.W.2d 558, 561 (Tenn.App.1981).

Regarding discretionary actions by public officials, it has been further stated:

"Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi judicial officer.... It has been stated that the sort of immunity which is often referred to as quasi-judicial immunity is more properly referred to as public official immunity. When acting in a quasi-judicial or discretionary matter, a public officer or employee is usually given immunity from liability to persons who may be injured as the result of an erroneous or mistaken decision, however erroneous his judgment may be, provided the acts complained of are done within the scope of the officer's authority, the officer is acting in good faith, and without willfulness, malice, corruption, or oppression in office."

\*  \*  \*  \*  \*  \*

"However, immunity can only exist where the defendant is required to exercise some modicum of official discretion. The official is immune only where that which he does in the performance of his lawful duties requires personal deliberation, decision, judgment, or planning. The doctrine of official immunity is intended to protect the public official or employee whose policymaking duties include choosing between various alternatives, even if one of the alternatives is to do nothing."

63 Am.Jur.2d, *Public Officers and Employees* § 362 (1984).

This appears to be just such a case in which the officer has been "required to exercise some modicum of official discretion" and has had to choose "between various alternatives, even if one of the alternatives is to do nothing."

As Highway Commissioner, Clem Seal's job entails determining which existing roads are most in need of repair and whether or not certain locations require new roads to be constructed. We find that such a job definitely requires that the person occupying it exercise a wide degree of discretion. Therefore, as the failure of Mr. Seal to remove the rock from Fox Branch Road was purely a discretionary activity, we conclude that neither he, as Highway Commissioner, nor Exchange Mutual, as his bonding company, can be held liable for the injury resulting from such nonfeasance, since no corruption or malice has been pleaded.

We accordingly hold the action of the trial court in dismissing the case as to the Defendants Seal and Exchange Mutual was proper.

Although we hold the court was in error in holding that T.C.A. § 29–20–203(a) was not broad enough to impose liability upon the county and was in error in dismissing the case as to the county, his action as to Seal and Exchange Mutual was correct even if his reason was incorrect. Where a trial judge has reached a correct result, it will not be reversed because he may have predicated it on an erroneous reason. *Cherokee Ins. Co. v. U.S. Fire Ins. Co.*, 559 S.W.2d 337 (Tenn.App.1977).

The judgment of the trial court is affirmed as to Defendant Seal and Exchange Mutual. It is reversed as to Hancock County and the case is remanded for a trial on its merits as to the County. The cost of this appeal is taxed one-half to the Appellants and one-half to Hancock County.

PARROTT, P.J., and FRANKS, J., concur.