Judy O'GUIN, Plaintiff–Appellant,

v.

Chris E. CORBIN, Defendant,

B.M. Petty and Dickson County, Tennessee, Defendants–Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 9, 1989.

Application for Permission to Appeal Denied by Supreme Court Sept. 11, 1989.

Dale M. Quillen, Richardson R. Lynn, Nashville, for plaintiff-appellant.

Thomas. C. Corts, Steven R. Clark, Ortale, Kelley, Herbert & Crawford, Nashville, for defendants-appellees.

OPINION

LEWIS, Judge.

Plaintiff Judy O'Guin has appealed from the trial court's dismissal of her complaint against B.M. Petty and Dickson County, Tennessee. In her complaint, plaintiff alleged that defendants-appellees had failed to use reasonable care in locating, constructing, repairing and maintaining the intersection at which the automobile driven by plaintiff and an automobile driven by defendant Corbin collided, and that as a result of the collision she received painful and permanent injuries and damages.

The pertinent facts are as follows:

On 28 May 1986, plaintiff and defendant Corbin were involved in an automobile accident on the county roads in Dickson County, Tennessee. Plaintiff was operating her automobile, traveling east on North Hummingbird Road. Corbin was operating his automobile and traveling north on Jones Creek Road. Both vehicles approached the intersection at approximately the same time and as the plaintiff entered Jones Creek Road her automobile was struck on the driver's side by the Corbin automobile.

Jones Creek Road, the paved roadway on which Corbin was traveling, is considered to be the thoroughfare. The paved portion of North Hummingbird Road ends at the intersection of Jones Creek Road and continues as a gravel road on the opposite side of the intersection from which the plaintiff was approaching.

On 28 May 1986, defendant B.M. Petty was the road engineer for the Dickson County Highway Department. He had held this position since 15 April 1985. On

28 April 1986, there was not a stop sign at the intersection of Jones Creek Road and North Hummingbird Road and, so far as the record shows, there had never been a stop sign at that intersection.

So far as the record shows, there had been no accidents at the intersection of Jones Creek Road and North Hummingbird Road. Also, insofar as the record shows, neither defendant Petty nor anyone in his department had actual notice of any accidents occurring at that intersection.

Mr. Petty testified that he did not consider the intersection of Jones Creek Road and North Hummingbird Road to be a dangerous intersection. It was his judgment as road engineer for the Dickson County Highway Department that it was not necessary to place a stop sign at the intersection of Jones Creek Road and North Hummingbird Road.

At the time the accident occurred, plaintiff was on her way to talk to a prospective insurance client. She had not been on North Hummingbird Road prior to the date of the accident. She did not see the intersection or know there was an intersection until she was in the intersection. She did not see the Corbin vehicle until she was in the intersection. Upon seeing the Corbin vehicle she tried to speed up to get through the intersection to avoid the collision, but was unable to do so.

There is evidence in the record, including a video tape of the intersection and still photographs, which shows vegetation (trees and bushes) on the county right-of-way surrounding the intersection. There is evidence that some of this vegetation was eight to ten feet high. There is evidence that because of the vegetation, you cannot safely see traffic approaching the intersection without coming to a complete stop.

There was no traffic control of any type at the intersection. The speed limit on North Hummingbird Road is fifty-five miles per hour.

Defendant Corbin testified that he did not see the plaintiff's automobile until it was in the intersection in front of him because of the vegetation blocking his view of approaching traffic from North Hummingbird Road.

Defendant Petty testified that he had never read or heard of the Uniform Manual on Traffic Control Devices for Streets and Highways. Tennessee Code Annotated § 54–5–108 adopts the Uniform Manual on Traffic Control Devices for Streets and Highways for Tennessee.

Mr. Petty also testified that since his election as county road engineer he had caused about 150 stop signs to be installed in Dickson County, that these were installed due to the amount of traffic or at the request of a community and that he used common sense rather than the guidelines contained in the Uniform Manual.

The evidence is that the county crews mow the highway right-of-ways twice each year and that the process of trimming tree limbs on the right-of-way throughout the county takes about two years. There is a fifty foot right-of-way on Jones Creek Road and a ditch-to-ditch right-of-way on North Hummingbird Road. It is normally June 10 through 20 of each year before the crew gets to the North Hummingbird Road and Jones Creek Road intersection for the first time. Gravel is sometimes spilled into the intersection by gravel trucks using North Hummingbird Road.

Francis May, who was called as an expert witness by plaintiff, testified that because of the high growth of vegetation there was zero sight distance of traffic on Jones Creek Road to drivers heading north on North Hummingbird Road. It was his opinion that a stop sign should have been placed on North Hummingbird Road at this intersection pursuant to the guidelines contained in the Uniform Manual. It was further his opinion that either installing a stop sign or properly maintaining the intersection would have avoided the injury to the plaintiff.

At the conclusion of the bench trial the trial court concluded: (1) that governmental immunity had been waived for injuries resulting from negligence relating to traffic control devices or improper maintenance of road or right-of-way; (2) that the plaintiff suffered severe injuries, a large

amount of expenses and future disability; (3) that the cause of the accident was that neither driver stopped before entering the intersection rather than a lack of a traffic control device or improper maintenance; (4) that drivers are supposed to stop and look when they come to an unmarked intersection according to the rules of the road; (5) that a careful and prudent driver could see there was an intersection; and (6) that the placement of a traffic control sign at the intersection was a discretionary act.

■ Plaintiff's first issue is "[t]he trial court erred in finding that the plaintiff's injuries were not caused by the defendants' [B.M. Petty and Dickson County, Tennessee] failure to place traffic control devices in the intersection or to properly maintain it."

The trial court found that plaintiff's injuries and damages were caused by her failure to stop before entering the intersection, rather than the negligence of the County and the County's road engineer. Plaintiff insists that the evidence preponderates against the court's finding that a careful and prudent driver would have known there was an intersection.

This Court reviews the findings of fact "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn.R.App.P. 13(d).

The trial court specifically found:

According to the proof as I have heard it, the Court finds that the cause of this accident was not the foliage or the lack of a clear sight around the corner that much has been made of, but rather by reason of the fact that neither of the parties entering this unmarked intersection stopped.... [Plaintiff] said she didn't realize it was an intersection and she drove into it, so it wasn't the fact that she couldn't see. She didn't stop and didn't try to see. She didn't know it was an intersection, so she didn't stop. [W]hat caused this accident is that you've got an unmarked intersection, and you've got two cars that drove up to it at about the same time, and neither one of

them stops at the unmarked intersection. Of course, we've got rules of the road to tell the driver what to do when they come to an unmarked intersection. They are supposed to stop and look. It also tells us which one of them has the right-of-way, but I know of no rule of law that entitled you to drive up to an unmarked intersection and just drive straight on through it because there is no stop sign there, so it would appear to the Court then that if the County were negligent, it is not so much in not cutting the foliage as it is in not putting up a stop sign.

The court further found:

[T]he proof here is undisputed that there was a restricted view especially looking to the left as you came up to Jones Creek Road on Hummingbird, but the Court, in viewing these photographs and listening to the witnesses, the Court is of the opinion and finds that a person driving up Hummingbird Road could see that there was an intersection. I'm not talking about seeing around the corner after you get up to the intersection. I'm talking about as you approach the intersection. The Court finds and holds that a person driving in a careful and prudent manner could see that there was an intersection there. Some of these photographs show that way down the road you can see where this road turns into a gravel road, which ought to put any person on notice to slow down, and if they are driving at a reasonable and prudent speed, as they near this intersection, they are going to be able to tell there is an intersection, and the law requires that a person stop at unmarked intersections, and ascertain that they can cross it safely before they proceed.

Plaintiff testified that she did not know there was an intersection until she was in the intersection. However, there is evidence, both from witnesses who testified and from the still photographs and the video tape, that a person who was observing the roadway could tell that the intersection was there.

The question of the credibility of witnesses is for the trial judge. The findings of

the trial court which are dependent upon the credibility of witnesses are entitled to great weight. *Town of Alamo v. Forcum–James Co.,* 205 Tenn. 478, 483, 327 S.W.2d 47, 49 (1959). The reason for this is that the trial judge alone has the opportunity to observe the manner and demeanor of the witness while testifying. The trial court, on an issue which hinges on witness credibility, will not be reversed unless there is found in the record clear, concrete and convincing evidence other than the oral testimony of the witnesses which contradicts the trial court's findings. *Tennessee Valley Kaolin Corp. v. Perry,* 526 S.W.2d 488, 490 (Tenn.App.1974).

There is no other evidence in this case that contradicts the trial court's findings.

The evidence does not preponderate against the findings of the trial court.

This issue is without merit.

■ Plaintiff's second issue is "[t]he trial court erred in concluding that the defendants' failure to install a stop sign or other traffic control device at this intersection was an immunized discretionary act."

Tennessee Code Annotated § 29–20–201 provides that governmental entities "shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary" except in those incidents where the legislature has otherwise provided. Governmental immunity is removed only in those situations which are specifically enumerated.

Tennessee Code Annotated § 29–20–203 provides:

**Removal of Immunity for Injury from Unsafe Streets and Highways—Notice Required.**—(a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. The terms "street" and "highway" shall include traffic control devices thereon.

(b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29–20–302.

In *Fretwell v. Chaffin,* 652 S.W.2d 755 (Tenn.1983), plaintiff's and defendant's automobiles collided at an intersection. The defendant Chaffin failed to see the stop sign at the intersection "allegedly because it was substantially obscured by low branches of nearby trees and by a bush or small tree which had grown up beside it." One of the issues was whether or not Tenn. Code Ann. § 29–20–203(a) included traffic control devices. The Tennessee Supreme Court stated:

Any doubt as to whether T.C.A. § 29–20–203(a) does or does not include traffic control devices has been removed by the enactment of 1983 Tenn.Pub.Acts, ch. 199, expressly providing that they are included within the terms of "street" and "highway." While this amendment is not retroactive, we believe it to be declaratory of the original legislative intent. According to the legislative committee reports it was adopted because of the doubt expressed by the Court of Appeals in the instant case.

It should be noted that the present case involves only the issue of reasonable and adequate maintenance of traffic control devices and signs already erected by local officials. It does not in any way involve the discretionary decision of such officials as to whether traffic control signals or devices are needed in the first instance. Quite different issues could be presented in that regard, and the present decision should not be construed as bearing upon such questions.

*Id.* at 757.

Whether to place a traffic control signal or device in the first instance is a discretionary decision.

Tennessee Code Annotated § 29–20–205 provides that immunity is removed for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the inju-

ry: (1) Arises out of the exercise or performance or the failure to exercise or perform a *discretionary function*, whether or not the discretion is abused...." (Emphasis supplied).

Here, whether to place a stop sign or other traffic control device at the intersection of Jones Creek Road and North Hummingbird Road was a discretionary decision to be made by defendant Petty, an employee of defendant Dickson County. Even if defendant Petty abused his discretion, immunity from suit is not removed.

Plaintiff argues that even if exception for discretionary acts applies in this case, that the "defendant's conduct puts it outside the exception." Plaintiff insists that since the legislature by the enactment of Tenn.Code Ann. § 54–5–108 adopted the Uniform Manual for Uniform Traffic Control devices, defendant must take the manual into consideration in determining where and when to erect a traffic control device and that since defendant Petty did not even know the Uniform Manual existed, he could not have exercised his discretion.

Warrant 2B–5 of the Uniform Manual on Traffic Control Devices Provides in pertinent part as follows:

**2B–5. Warrants for stop sign.**

Because the STOP sign causes a substantial inconvenience to motorists, it should be used only where warranted. A STOP sign *may* be warranted at an intersection where one or more of the following conditions exist:

1. Intersection of a less important road with a main road where application of the normal right-of-way rule is unduly hazardous.

2. Street entering a through highway or street.

3. Unsignalized intersection in a signalized area.

4. Other intersections where a combination of high-speed, restricted view, and serious accident record indicates a need for control by the STOP sign. [Emphasis supplied]

The Uniform Manual provides for discretion in locating a traffic control device. It provides that "[a] stop sign *may* be war-

ranted...." (emphasis supplied), not that a stop sign *shall* be warranted.

Defendant, under the proof in this record, had reasonable grounds for the belief that a stop sign was not necessary at the intersection of North Hummingbird Road and Jones Creek Road.

Further, even if defendant Petty abused his discretion, immunity is not removed. Tenn.Code Ann. § 29–20–205(1).

We have reviewed this record and our review of the record fully supports the decision of the trial court in dismissing plaintiff's complaint.

Plaintiff's issues are without merit and the judgment is affirmed. Costs are assessed to plaintiff and the cause remanded to the trial court for further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.