**Henry BUTLER, Plaintiff/Appellee,**

v.

**CITY OF DYERSBURG and Mozella P. Finley, Defendants/Appellants.**

Court of Appeals of Tennessee, Western Section, at Jackson.

July 9, 1990.

Application for Permission to Appeal Denied by Supreme Court Oct. 1, 1990.

John W. Price, Dyersburg, for plaintiff/appellee.

James M. Glasgow, James M. Glasgow, Jr., Union City, Elam, Glasgow & Acree, for defendants/appellants.

FARMER, Judge.

City appeals the trial court's judgment finding that it created an unreasonable and dangerous condition which was a proximate cause of the injuries to the plaintiff.

This action arose out of a traffic accident between Henry Butler and Mozella P. Finley at the intersection of Sylvan Road and Elmo Ozment Drive in Dyersburg, Tennessee. Butler was driving north on Sylvan Road and Finley was driving east on Elmo Ozment Drive when the collision occurred. Butler sued Finley and the City of Dyersburg ("City") alleging that the City failed to provide a traffic control device at this intersection and that Finley entered this intersection and failed to give way to Butler's vehicle approaching to her right as she was bound to do in an uncontrolled intersection. The action was severed and a separate trial was ordered for the action against the City.

At trial the City contended that they were immune from suit for failing to place a traffic control device at the intersection

777

under T.C.A. § 29–20–205 (1980) which provides as follows:

**Removal of immunity for injury caused by negligent act or omission of employees—Exceptions.**—Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:

(1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused....

(4) Arises out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property....

Butler contended that the City's immunity from suit was removed under T.C.A. § 29–20–203 (Supp.1989) which provides as follows:

**Removal of immunity for injury from unsafe streets and highways—Notice required.**—(a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. The terms "street" and "highway" shall include traffic control devices thereon.

(b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29–20–302.

The trial court made the following findings of facts and conclusions of law from the bench:

The Court finds that this accident happened on or about May the 13th, 1986....

The Court finds the road was flat, both Elmo Ozment Road and Sylvan Road.

The Court finds that Sylvan Road had been used for a very substantial period of time, to extend over a period of years, whereby Elmo Ozment Road had only relatively recently been opened to the public.

The Court finds that there were no traffic control devices on Elmo Ozment Drive to indicate an intersection or to indicate the need to stop. The Court finds the same is true with reference to Sylvan Road.

The Court finds that the intersection of Elmo Ozment Drive and Sylvan Road is, for all intents and purposes, a "T" intersection, whereby a person traveling east on Elmo Ozment Drive, which is paved, would need to turn either left or right when that person got to Sylvan Road. The Court finds that there is a gravel road which does extend on across Sylvan Road; however, that particular road, as the Court stated, was gravel and was not intended for the general public.

The Court finds that Mrs. Finley, on the date and time in question, did not see the intersection as she traveled east on Elmo Ozment Drive. The Court further finds that she was not familiar at all with the intersection. Even though she had been on it from a different direction the same day, she was not generally familiar with the intersection. She was proceeding east on Elmo Ozment Drive, looking for the intersection and looking at the place to turn north. The Court finds that she went on into the intersection. The Court further finds that Mrs. Finley was looking for a stop sign and a place to turn. Obviously there was no stop sign and she did not see the place to turn. She didn't see the truck until she got into the intersection.

The Court finds that Elmo Ozment Drive and the intersection were completed and opened to public traffic on or about July the 9th, 1984; that it was the City's responsibility to erect any traffic control devices or signs that would be needed.

The Court further finds that it was the custom of the City of Dyersburg for the Police Department to determine the need for traffic control devices and traffic signs, to include stop signs.

The Court further finds that the City of Dyersburg approves road construction

before a road is open to the public and did so in this instance.

The Court further finds that under the custom existing in the City, and under their policy, the Assistant Chief of Police decides when and where traffic control devices and signs are needed. The Court finds that under their policy, the Assistant Chief of Police determines the need. He contacts the appropriate person relating to installation. There does not exist within the City any policy whereby any City official notifies the Police Department as to the opening of a new road and possible need for traffic control devices, and certainly it was not done in this instance.

The Court finds that there were no reported accidents at this intersection prior to this accident. The Court finds, however, that City police officers patrol in this district and would have patrolled this particular intersection and would have been and were aware of the condition that existed at this particular intersection.

*The Court finds that the Assistant Chief of Police had not really considered whether or not there was a need for a traffic control device at this particular intersection prior to the accident.* The Court finds there were no discussions within his department concerning the need for a traffic control device, and, therefore, he had not really considered it.

The Court further finds as a matter of fact that it is obvious, even to a layman, that a stop sign or some warning device, some kind of traffic control device, was needed at this particular intersection to indicate who had the right of way.

The Court finds as a matter of fact that the intersection of Elmo Ozment Drive and Sylvan Road were [sic] unsafe and dangerous, since there was no stop sign or any other traffic control device there to regulate the flow of traffic and to indicate right of way....

The Court makes the following conclusions of law:

The Court concludes that the plaintiff acted with reasonable care and was not negligent....

The miles per hour testified to by Mr. Butler is relevant but not conclusive.

The Court finds that the actions of Mr. Butler were not a proximate cause of this accident.

The Court finds that if Mr. Butler were going forty to forty-five miles an hour, which the Court has doubts about, that would not have been a proximate cause of this accident.

The Court finds that the failure of the City of Dyersburg to install a stop sign at this intersection created an unreasonable and dangerous condition as a matter of law. See *[Swafford] v. City of Chattanooga,* 743 S.W.2d 174 (Tenn.Ct.App. 1987).

This is not a situation where a city official has determined that no traffic control device is needed. That is the distinguishing factor between this case and the *O'Guin* [1] case cited by the defendant.

The Court has carefully examined the testimony of Officer Criswell as it relates to this particular issue. In the *O'Guin* case, the Court specifically found that there had been a specific determination by the governmental entity that no traffic control device was needed. That is not the case here. Officer Criswell testified that prior to the accident he did not see the need for signs; did not consider it a dangerous intersection. *The Court finds as a matter of fact that what he was really saying, and which he eventually clarified, was that he had not really considered it before the accident.* There had been no discussions about it at all. Therefore, neither he nor any other city official had made any kind of determination about the need for a traffic control device, and obviously there was a need, as apparent to anybody, there being a need for a traffic control device at this what in essence was a "T" intersection.

---

1. *O'Guin v. Corbin,* 777 S.W.2d 697 (Tenn.App. 1989).

The Court further finds that this condition was known to exist by the City since its officers regularly patrolled this area. Therefore, the Court concludes as a matter of law that the City had actual and constructive notice of this dangerous and unsafe condition.

The cases are somewhat confusing. I think I understand what the cases are saying. The Court is aware of no case with facts similar to these....

It appears to the Court that this case is controlled by T.C.A. 29–20–203, relating to the defective, unsafe or dangerous conditions of any street, alley, sidewalk or highway.

The Court finds no distinction between this case and *[Swafford]*. The Court finds that *[Swafford]* is the closest case to this one.

*Again, the Court repeats, there is no evidence of any kind of discretionary decision having been made one way or another about the need for a traffic control device.*

It appears to the Court that the reasonable approach to the problem as it relates to 203 and 205 is as follows: If 203 applies, there is no need for a plaintiff to try to come under 205. If a plaintiff shows that there is ... a defective, unsafe, or dangerous condition of any street *et cetera*, that statute applies. Whether or not it is a discretionary matter is not relevant under 203. The Court finds that the plaintiff has come under 203 in this case....

The Court further concludes as a matter of law that the unsafe and dangerous condition of the intersection of the streets was a proximate cause of the accident and the injuries sustained by the plaintiffs. (Emphasis added)

The court's judgment concluded that the City had created an "unreasonable and dangerous condition" which was a proximate cause of Butler's injuries and ordered the City to pay Butler $7,500 in damages. On appeal the City raises the following issue:

Did the trial court err in applying T.C.A. § 29–20–203(a) dealing with liability for a defective, unsafe, or dangerous condition rather than T.C.A. § 29–20–205 dealing with removal of immunity for injury caused by the negligent acts or omissions of governmental employees?

In support of this issue, the City argues that the trial court erroneously found that T.C.A. § 29–20–205 would not apply due to the fact no city official had made any determination as to whether a traffic control device was needed at the intersection. The City argues that T.C.A. § 29–20–205 specifically grants immunity for acts arising out of the failure to exercise or perform a discretionary function. Therefore, even if the proper city official failed to make a determination as to whether or not a traffic control device should be placed at the intersection, there would still be no liability.

Butler brought this action against the City under the Tennessee Governmental Tort Liability Act, T.C.A. §§ 29–20–101 et seq. In *Gordon v. City of Henderson,* 766 S.W.2d 784 (Tenn.1989) our Supreme Court stated:

The Tennessee Governmental Tort Liability Act does not create any new causes of action, but removes the immunity of governmental entities from suit in limited and specified instances. It does this in a unique fashion. First the Act iterates the general rule of immunity of governmental entities from suit for injuries resulting from activities of the governmental entity and expressly extends the immunity to proprietary activities, which formerly were subject to suit. T.C.A. § 29–20–201; *Crowe v. John W. Harton Mem. Hospital,* 579 S.W.2d 888 (Tenn.App.1979). Then, the Act removes the immunity "for injury from negligent operation of motor vehicles" (T.C.A. § 29–20–202); "for injury from unsafe streets and highways" (T.C.A. § 29–20–203); "for injury from dangerous structures" (T.C.A. § 29–20–204); and "for injury caused by negligent act or omission of employees," with numerous exceptions. (T.C.A. § 29–20–205).

766 S.W.2d at 786.

Several decisions have examined the question of governmental immunity under the Act as it relates to traffic accidents. In

*Fretwell v. Chaffin*, 652 S.W.2d 755 (Tenn. 1983) the Supreme Court held that T.C.A. § 29–20–203 could apply if it were shown that the City of Knoxville was guilty of negligence for allowing an existing traffic control sign to be obscured by the foliage of a small tree or shrub and a causal connection between this negligence and a collision at an intersection was shown. The court also stated:

It should be noted that the present case involves only the issue of reasonable and adequate maintenance of traffic control devices and signs already erected by local officials. It does not in any way involve the discretionary decision of such officials as to whether traffic control signals or devices are needed in the first instance. Quite different issues could be presented in that regard, and the present decision should not be construed as bearing upon such questions.

652 S.W.2d at 757.

In *Baker v. Seal*, 694 S.W.2d 948 (Tenn. App.1984) the court found that the failure of a county to maintain the surface conditions of a county road in a proper, reasonably safe fashion could lead to liability under T.C.A. § 29–20–203. In *Baker* the court noted that under the reasoning in *Fretwell*, T.C.A. § 29–20–203 was broad enough to impose liability for failure to *maintain* a stop sign. In remanding the case for trial for the county's alleged negligence for failing to maintain the road in a reasonably safe condition the court stated:

[I]n *Fretwell* the Court made a distinction between the entity's discretionary decision as to whether or not to install traffic controls in the first place and its mandatory obligation, once the controls are installed, to maintain them adequately. Likewise, in the case at bar, Hancock County may have had the discretion initially whether or not to construct Fox Branch Road; however, once the road was constructed, the county obligated itself to maintain the road's surface in a reasonably safe condition.

694 S.W.2d at 950.

In *Davis by Davis v. City of Cleveland*, 709 S.W.2d 613 (Tenn.App.1986) the plaintiff alleged that the governmental employee responsible for setting the timing sequence on a traffic signal negligently set the yellow caution interval too short at an intersection for traffic to clear the intersection. The plaintiff alleged that this caused his collision with a tractor-trailer that entered the intersection on a red light and collided with plaintiff's vehicle which had entered the intersection with a green light. The plaintiff also contended that certain governmental entities, through their employees, were negligent in failing to inspect and/or re-evaluate the timing sequence on the signal after its original installation. The court found that T.C.A. § 29–20–205 was the proper starting point to determine immunity because the complaint was directed at the negligent acts or omissions of employees of either the City of Cleveland or Bradley County, acting in the course and scope of their employment, rather than upon a defective condition of the traffic signal light. In affirming the trial court's granting of summary judgment in favor of both defendants the court held:

[W]e think that both the original setting of the yellow caution interval and any failure to reset such timing sequence in this instance represented a judgment call by the person responsible for such setting in the exercise of his professional judgment, and is thus a discretionary act within the meaning of T.C.A. § 29–20–205(1), for which immunity has not been removed by the legislature.

709 S.W.2d at 615.

In *Swafford v. City of Chattanooga*, 743 S.W.2d 174 (Tenn.App.1987) the plaintiffs brought an action against the City of Chattanooga for damages for personal injuries and property damage sustained in an automobile accident allegedly caused by the City of Chattanooga's failure to install proper signs and pavement markings to channel traffic on a newly opened five-lane street. In that case, the City had painted the solid white stripes delineating the extreme edges of the newly paved section, the interrupted white stripe delineating the boundary between the inside and outside lanes of traffic on each side of the street, and the unbroken white stripes delineating

the right-hand side of the newly established left turn lane, but had failed to paint the solid and interrupted yellow lines that were to define the boundaries between the new turning lane and each of the inside lanes, and the large white arrows indicating left turns only from the inside west bound lane because the City owned only one paint striping truck and could not paint both white and yellow markings at the same time. Thus by the end of the working day on Friday only the aforementioned painting had been completed and the street remained in that condition throughout the weekend. In finding the City liable for a head-on collision which occurred in the center of the street the court reasoned:

The City suggests that this entire action is barred under T.C.A. § 29–20–205(1) (1980). That section creates an exception to the removal of immunity from suit where the negligent act or omission of a governmental employee "arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused." The City's argument fails for two reasons. First, although the trial court discusses the issue of discretionary functions, it is apparent that its award to Mr. Swafford is based on T.C.A. § 29–20–203(a) (1980 and Supp. 1986), which removes governmental tort immunity "for an injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity." The section goes on to say that "the terms 'street' and 'highway' shall include traffic control devices thereon," but it does not create an exception for discretionary functions.

Second, even if the trial court had found (which it did not) that the injuries here were "proximately caused by a negligent act or omission of any employee" of the City under § 29–20–205, we would not find that the placing of traffic control lanes on a five-lane thoroughfare that served, as the proof shows, 11,500 cars per day is a discretionary function....

In a similar case recently addressed by this Court, we held that a county "may have had the discretion initially whether or not to construct [a road]; however, once the road was constructed, the county obligated itself to maintain the road's surface in a reasonably safe condition." *Baker v. Seal*, 694 S.W.2d 948, 950 (Tenn.App.1984). We think that the same obligation applies to the City of Chattanooga, and find, as a matter of law, that the failure to adequately delineate traffic flow, or to warn of the absence of adequate delineation, on a five-lane thoroughfare handling 11,500 cars per day, is "a defective, unsafe, or dangerous condition" under T.C.A. § 29–20–203(a).

743 S.W.2d at 176–77.

In *O'Guin v. Corbin*, 777 S.W.2d 697 (Tenn.App.1989) two automobiles collided at an unmarked intersection. One driver sued the other driver, the county, and the county road engineer alleging that the county's and county road engineer's failure to place traffic control devices at the intersection was negligence from which immunity from suit was removed under T.C.A. § 29–20–203. The county road engineer testified that it was not necessary to place a stop sign at the intersection because he did not consider it to be a dangerous intersection. In affirming the dismissal of the complaint against the county and the engineer the court stated:

Whether to place a traffic control signal or device in the first instance is a discretionary decision.

Tennessee Code Annotated § 29–20–205 provides that immunity is removed for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury: (1) Arises out of the exercise or performance or the failure to exercise or perform a *discretionary function*, whether or not the discretion is abused...." (Emphasis supplied).

Here; whether to place a stop sign or other traffic control device at the intersection of Jones Creek Road and North Hummingbird Road was a discretionary

decision to be made by defendant Petty, an employee of defendant Dickson County. Even if defendant Petty abused his discretion, immunity from suit is not removed.

777 S.W.2d at 700–01.

Although the Act does not define discretionary function, the Supreme Court has on several occasions defined the discretionary function immunity under the common law:

Where the duty is absolute, certain, and imperative, and is simply ministerial, the officer is liable in damages to any one specially injured, either by his omitting to perform the task or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, and to be exerted or withheld according to his own judgment, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a willful exercise of them, where no corrpution [sic] or malice can be imputed to him, and he keeps within the scope of his authority. Some of the cases refer to any officer possessing such discretionary powers as a judicial or quasi officer. But this rule goes no further than to relieve public officials of liability for nonfeasance and for the misfeasance of their servants or agents.

Hale v. Johnston, 140 Tenn. 182, 203 S.W. 949, 953 (1918). See also Gordon v. City of Henderson, 766 S.W.2d 784, 786 (Tenn. 1989).

Reviewing the aforementioned cases we note that our courts have removed immunity from suit under T.C.A. § 29–20–203 when a governmental entity has initially exercised its discretion to construct a road or put in a traffic control device and has negligently failed to maintain the road surface in a reasonably safe condition or allowed the traffic control device to be obscured by foliage. However, immunity from suit has not been removed when a governmental entity fails to exercise or perform a discretionary function, such as installing a traffic control device or setting the yellow caution interval on a traffic control device. For example, in Swafford, the City of Chattanooga had undertaken to

paint stripes upon a newly opened five-lane street but had negligently failed to adequately delineate the traffic flow or to warn of the absence of adequate delineation. There, the City had exercised its discretion in deciding to paint the stripes, but had negligently failed to complete the job. Whereas, in cases such as O'Guin, there had been a decision not to place a stop sign at an intersection, a discretionary act, thus there was immunity from suit under T.C.A. § 29–20–205.

In this case, the trial court found that the City of Dyersburg had failed to install a stop sign at the intersection, thereby creating an unreasonable and dangerous condition as a matter of law. The trial court found this not to be a discretionary act because there had been no specific determination by a governmental entity as to whether or not a traffic control device was needed, thus T.C.A. § 29–20–205 would not apply. We do not read T.C.A. § 29–20–205 so narrowly. Our review of this statute shows that immunity from suit is not removed for an injury proximately caused by a negligent act or omission of any employee within the scope of his employment if the injury arises out of the exercise or performance or the failure to exercise or perform a discretionary function. This language encompasses not only misfeasance; but also nonfeasance, which the trial court, in essence, found in this case. Thus, under T.C.A. § 29–20–205 a governmental entity is immune from suit for failing to make a decision to install a traffic control device, since this would be a failure to exercise or perform a discretionary function. Accordingly, based on T.C.A. § 29–20–205, we hold that the City's failure to install a traffic control device is discretionary, and the City is immune from suit for damages resulting from the absence of such device due to nonfeasance in the exercise of a discretionary act.

The judgment of the trial court is reversed, the complaint against the City is dismissed, and this cause is remanded to the trial court. Costs of this appeal are

taxed to the appellee for which execution may issue if necessary.

TOMLIN, P.J., (W.S.), and HIGHERS, J., concur.