Lisa HARRIS, individually, and as Administratrix of the Estate of Jason M. Harris, Plaintiffs–Appellants,

v.

WILLIAMSON COUNTY, Tennessee, and Williamson County School Board of Education, Defendants–Appellees.

Court of Appeals of Tennessee, Western Section, at Nashville.

Jan. 17, 1992.

Application for Permission to Appeal Denied by Supreme Court May 4, 1992.

Edward P. Silva, R.E. Lee Davies, Franklin, Jack Norman, Jr., Nashville, for plaintiffs-appellants.

Paul C. Ney, Jr., Robin A. Saxon, Nashville, for defendant-appellee Williamson County Bd. of Educ.

Richard A. Buerger, Jeffrey D. Moseley, Franklin, for defendant-appellee Williamson County.

CRAWFORD, Judge.

Plaintiffs, Lisa Harris, individually, and as the Administratrix for the Estate of Jason M. Harris, deceased, appeal from the judgment of the trial court dismissing her suit against defendants, Williamson Coun-

ty, Tennessee, and Williamson County School Board.

In September, 1987, Jason Harris lived across U.S. Highway 31 A from College Grove Elementary School in Williamson County, Tennessee. From the time he began first grade until he completed College Grove, he had to cross U.S. Highway 31 A in the morning in order to get to school. During the first three grades, Jason was driven or walked to school by family members. From the time he began fourth grade, he was permitted to walk to school and cross the highway alone.

In 1987, Jason no longer attended school at College Grove. He did, however, cross the highway each morning to a parking area located on the grounds of College Grove, where he boarded a school bus that took him and other students to Page Middle School. The bus left at approximately 7 a.m. each morning.

Highway 31 A through College Grove has a posted speed limit of 40 m.p.h. In addition, at the time of the accident, there was one sign posted on either side of College Grove School, the south sign being approximately 1,700 feet from the school, that read "School 15 m.p.h. When Children Are Present." These were the only traffic control devices that purported to establish a school zone speed limit, and they had been in place for many years. Plaintiff maintains that Williamson County owned and controlled these signs but the county denies this assertion.

On September 11, 1987, Michael Williams was driving his pickup truck north on Highway 31 A in College Grove. The regular posted speed limit for traffic on 31 A was 40 m.p.h. and Mr. Williams was maintaining a speed of 35 to 40 m.p.h. as he entered the school zone from the south shortly before 7:00 a.m. Williams drove this roadway every day going to and from his place of employment. He was aware of the 15 m.p.h. speed limit sign, but was not aware that children would be crossing Highway 31 A before 7:00 a.m. He therefore did not attempt to slow to 15 m.p.h. as he traveled down the roadway on September 11, 1987. Mr. Williams traveled through the business district, around a slight curve approaching the school, and struck Jason Harris while he was walking across Highway 31 A.

Jason sustained severe injuries and died on April 25, 1989, a little more than 18 months after the accident. During that time, plaintiff incurred $666,182.60 in medical bills for the care of Jason, and the Estate of Jason Harris incurred funeral expenses in the amount of $4,237.48.

On September 8, 1988, Lisa Harris, Jason's mother, filed this action individually and as next friend of Jason Harris against Michael L. Williams and Williamson County, Tennessee. The complaint alleged, inter alia, that Williamson County had been negligent in failing to provide and maintain proper traffic signals at College Grove Elementary School, and that the failure to provide and maintain such signals was a proximate cause of plaintiff Jason Harris' injuries. The Williamson County Board of Education was joined as a defendant on March 8, 1989 by amendment, which alleged that the Board was jointly and severally liable with Williamson County for all the acts of negligence alleged against the county.

After Jason's death in 1989, Lisa Harris, as Administratrix of his estate, was substituted as a proper party plaintiff pursuant to Rule 25, Tenn.R.Civ.P. The suit against the county and school board was bifurcated for trial without a jury pursuant to T.C.A. § 29–20–307 (Supp.1991) on January 23, 24 and 25, 1991. On April 9, 1991, the court issued a memorandum order finding that Lisa Harris' individual claim against the school board was time barred and that neither the county nor the school board was liable on the remaining claims. A judgment was duly entered dismissing plaintiffs' suits and this appeal followed.

Although plaintiffs' brief presents six issues for review, we perceive the dispositive issues to be: (1) Whether Williamson County is immune from suit pursuant to T.C.A. § 29–20–203, and (2) Whether Williamson County and the Williamson County School Board are immune from suit under T.C.A. § 29–20–205.

As to the first issue, T.C.A. § 29–20–203 (1991 Supp.) provides in pertinent part:

Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk, or highway, owned and controlled by such governmental entity. *"Street" or "highway" includes traffic control devices thereon.* (Emphasis added.)

The thrust of plaintiffs' case is that the county is liable because it owned and controlled the school's speed limit signs, heretofore described, which constituted a defective, unsafe or dangerous condition that proximately caused the damages alleged. Basically, plaintiffs assert that the signs were defective and unsafe because of the lack of flashing lights as provided for in T.C.A. § 55–8–152(e) (1988) and as required by the *Manual on Uniform Traffic Control Devices.*

Thus, in order to establish that the county's immunity from suit has been removed under this statute, plaintiff must show that, (1) the county owned and controlled the 15 m.p.h. speed signs which were in place along Highway 31 A adjacent to College Grove Elementary School on the morning of the accident, and (2) that these signs were defective. Unless plaintiff is able to prove the first of these requirements, the second need not be addressed.

■ Whether the county owned and controlled the signs is a question of fact. In its memorandum opinion, the trial court found:

It is clear in this case that the Defendants neither owned or controlled Highway 31 A. Neither is there any proof that either Defendant owned or controlled the traffic control devices that were in place on September 11, 1987.

■ Since this case was tried by the court sitting without a jury we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d). After a careful review of the record, we must concur with the trial court's findings on this issue.

■ Proof introduced at trial indicated that the traffic signs had been in place for 30 or 40 years, but there is no direct proof in the record to show who was responsible for erecting them.

No one disputes that the county had the authority to erect traffic control devices at College Grove Elementary, nor that it had created special speed zones in the vicinity of other county schools by erecting signs and flashers, or even that it created a special speed zone at College Grove Elementary in the months following the accident, by erecting signs and flashing lights. Nevertheless, these facts do not constitute direct evidence that the county owned and controlled the signs in question.

Even if the Court were to construe the foregoing as representing some circumstantial evidence that the county owned and controlled the signs in question, this evidence would be overwhelmed by the weight of other circumstantial evidence in the record to the contrary. The record indicates that prior to 1987 there was no contract with the State of Tennessee permitting Williamson County to place any type of traffic control device on State Highway 31 A; nor do any Williamson County records show a request by the county for traffic control devices in the area of College Grove Elementary School prior to the accident. The county executive testified that the minutes of the Williamson County Commission revealed no attempt to establish a special speed zone in College Grove prior to 1987. In addition, there was undisputed testimony that at least one civic group in the community, the Lions Club, had placed traffic control signals on Highway 31 A in the years prior to the accident. There was also testimony introduced to show that the Coca Cola company at one time had placed metal statues on the highway at College Grove Elementary School in an effort to slow traffic.

In short, the evidence does not preponderate against the trial court's conclusion that Williamson County did not own or control the traffic signs in question.

■ The remaining issue is whether either Williamson County or the Williamson County School Board is immune from suit under § 29–20–205 of the Governmental Tort Liability Act.

With respect to this issue, § 29–20–205 (1980) provides as follows:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except* if the injury: (1) arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused. (Emphasis added.)

Plaintiff argues that defendants were negligent in failing to create a special speed zone at College Grove Elementary School as provided for in T.C.A. § 55–8–152(e) (1988). The relevant statutory language states:

(e) Counties and municipalities *are authorized to establish special speed limits upon any highway or public road of this state within their jurisdiction,* except at school entrances and exits to and from controlled access highways on the system of state highways, which is adjacent to school grounds that are devoted primarily to normal school day activity. Such speed limit shall be enacted based on an engineering investigation and shall not be less than fifteen (15) miles per hour and shall be in effect only when proper signs are posted with a warning flasher or flashers in operation.... (Emphasis added.)

The threshold question in resolving this issue is whether an act or failure to act with regard to creating a special speed zone for a school is a discretionary function under § 29–20–205.

The Governmental Tort Liability Act does not define "discretionary function." Until recently the courts have applied the following common law definition:

Where the duty is absolute, certain, and imperative, and is simply ministerial, the officer is liable in damages to any one specially injured, either by his omitting to perform the task or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, and to be exerted or withheld according to his own judgment, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a willful exercise of them, where no corruption or malice can be imputed to him, and he keeps within the scope of his authority.

*Hale v. Johnston,* 140 Tenn. 182, 197, 203 S.W. 949, 953 (1918).

In *Bowers v. City of Chattanooga,* 826 S.W.2d 427 (Tenn.1992) our Supreme Court speaking through Justice Drowota overruled *Hale* and its progeny, to the extent the definition in *Hale* conflicts with the Court's opinion, and adopted the planning-operational test followed by the federal courts, as well as by the courts of many other states:

Under the planning-operational test, decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity. *See Carlson v. State,* 598 P.2d 969, 972 (Alaska 1979). The distinction between planning and operational depends on the type decision rather than merely the identity of the decision maker. *See id.*

Under the planning-operational test, discretionary function immunity does not automatically attach to all acts involving choice or judgment. Such an analysis recognizes that, to some extent, every act involves discretion. Rather, the underlying policy of governmental immunity is better served by examining (1) the decision-making process and (2) the propriety of judicial review of the resulting decision. *Cf. Peavler* [*v. Board of County Commissioners of Monroe County* ], 528 N.E.2d [40] at 46 [Ind.1988] (examining the nature of the conduct, its effect on governmental operations, and the capacity of a court to evaluate the decision).

A consideration of the decision-making process, as well as the factors influencing a particular decision, will often reveal whether that decision is to be viewed as planning or operational. If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the result is a planning decision. These decisions often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules. *See id.*

On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act. In other words, "the discretionary function exception [will] not apply to a claim that government employees failed to comply with regulations or policies designed to guide their actions in a particular situation." *Aslakson v. United States*, 790 F.2d 688, 692 (8th Cir.1986).

Another factor bearing on whether an act should be considered planning or operational is whether the decision is the type properly reviewable by the courts. The discretionary function exception "recognizes that courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision" and therefore allows the government to operate without undue interference by the courts. *See Wainscott v. State*, 642 P.2d 1355, 1356 (Alaska 1982). Put succinctly:

> [T]he judiciary confines itself ... to adjudication of facts based on discernible objective standards of law. In the context of tort actions ... these objective standards are notably lacking when the question is not negligence but social wisdom, not due care but political practicability, not [reasonableness] but economic expediency. Tort law simply furnishes an ·inadequate crucible for testing the merits of social, political, or economic decisions.

*Peavler*, 528 N.E.2d at 44–45 (quoting *Blessing v. United States*, 447 F.Supp. 1160, 1170 (E.D.Penn.1978)).

*Id.* at 430–431.

Although the Court in *Bowers* restricts its discussion of the planning-operational test to situations where governmental entities, or governmental employees have made *"decisions,"* the language of § 29–20–205 is not so narrowly limited. By the terms of the statute, immunity from suit is not removed for an injury proximately caused by a negligent act or *omission* of any employee within the scope of his employment in the performance of a discretionary act or the *failure to exercise* or perform a discretionary function.

From our review of the record, no proof was introduced at trial to show that either defendant ever considered the issue of whether to erect traffic control devices at College Grove Elementary School. Certainly, there is no evidence in the record to indicate that either defendant ever made a decision regarding this matter[1]. The Court further notes that the language of § 55–8–152(e) is permissive; it *allows* counties to establish special speed zones; it does not require them to do so.

In *Butler v. City of Dyersburg*, 798 S.W.2d 776 (Tenn.App.1990), this Court was faced with an analogous issue. In that case, the City of Dyersburg had failed to install a stop sign at a dangerous intersection. In fact, the city had not considered whether or not there was a need for such a traffic control device. This Court found that § 29–20–205 applied and held that "a governmental entity is immune from suit

---

1. Indeed, by the terms of T.C.A. § 55–8–152(e), the School Board would not have the authority to make such a decision.

for failing to make the decision to install a traffic control device, since this would be a failure to exercise or perform a *discretionary function.*" 798 S.W.2d at 782. (Emphasis added.)

Although the Court in *Butler* cited the common law definition of discretionary function given in *Hale* in reaching its decision, we believe the Court would have reached the same conclusion under the Supreme Court's planning-operational test.

The judgment of the trial court is affirmed. Costs of the appeal are assessed against appellants. The case is remanded to the trial court for such further proceedings as may be necessary.

HIGHERS and FARMER, JJ., concur.