## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 1998-CA-01210-SCT

*SARAH JONES AND LOTTIE STILL*

*v.*

*MISSISSIPPI DEPARTMENT OF TRANSPORTATION, TUNICA COUNTY, TUNICA COUNTY BOARD OF SUPERVISORS AND OTHER UNKNOWN DEFENDANTS*

### CONSOLIDATED WITH

### NO. 1998-CA-01211-SCT

*JAMES L. STILL AND LOTTIE STILL*

*v.*

*MISSISSIPPI DEPARTMENT OF TRANSPORTATION, TUNICA COUNTY, TUNICA COUNTY BOARD OF SUPERVISORS AND OTHER UNKNOWN DEFENDANTS*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/11/1998 |
| TRIAL JUDGE: | HON. ELZY JONATHAN SMITH, JR. |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | D. BRIGGS SMITH, JR. |
| ATTORNEYS FOR APPELLEES: | ROBERT H. HARPER |
| | JIM FRAISER |
| | JAMES T. McCOLGAN, III |
| | MARCY L. DODDS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 6/10/1999 |
| MOTION FOR REHEARING FILED: | 6/15/99; Denied 09/02/99 |
| MANDATE ISSUED: | 09/09/99 |

**BEFORE SULLIVAN, P.J., BANKS AND WALLER, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Here we are asked to determine whether the MDOT's and a county's failure to place traffic control devices on a road is a discretionary act under the Tort Claims Act entitling the county to immunity from appellants' suit to recover for injuries sustained in an automobile accident on the road. We conclude that, although the failure to place the traffic control devices was a discretionary act, the MDOT and the county had a duty to warn motorists of a dangerous condition of which it had knowledge. Accordingly, we reverse

and remand.

## I.

¶2. On January 29, 1995, Lottie Still ("Still") and Sarah Jones ("Jones") were injured in an one-vehicle accident as Still was driving along Bowden Lost Lake Road in Tunica County. Jones was a passenger in the vehicle. Irwin Place Road, which had recently been reopened after a construction project, intersected with Bowden Lost Lake Road to form a "T" intersection.[1] There was no STOP sign at the end of Bowden Lost Lake Road nor were there any traffic control signs warning oncoming traffic that they were approaching a "T" intersection. Upon reaching the intersection Still failed to stop the vehicle or to maneuver a right or left turn. Still crossed the intersection, crashing her car into a ditch.

¶3. Separate actions were filed by Jones and Still against Mississippi Department of Transportation, Tunica County and Tunica County Board of Supervisors. James Still, husband of Mrs. Still, joined in the action with his wife seeking to recover for loss of consortium. Jones and the Stills claim that the defendants negligently failed to erect traffic control signs warning of the "T" intersection and/or a STOP sign. Jones and the Stills also claim that such failure caused the accident and resulted in their respective injuries.

¶4. MDOT and Tunica County filed Rule 12(b)(6) motions to dismiss. The trial court consolidated Jones's and the Stills' actions and entered an Order granting MDOT's and Tunica County's motions to dismiss. The trial court found that the placement of traffic control signs was a discretionary function and as such the defendants were immune from suit pursuant to Miss. Code Ann. § 11-46-9 (d)(Supp. 1998).

## II.

### a.

¶5. In considering whether to grant a Rule 12(b)(6) motion to dismiss the trial court must take the "'pleaded allegations of the complaint [] as true and a dismissal should not be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief.'" *Butler v. Board of Sup'rs*, 659 So. 2d 578, 581 (Miss. 1995) (quoting *Overstreet v. Merlos*, 570 So. 2d 1196, 1197 (Miss.1990)). The same standard is applied on appeal when considering the propriety of the trial court's granting a Rule 12(b)(6) motion to dismiss. *McFadden v. State*, 542 So. 2d 871, 874-75 (Miss. 1989).

### b.

¶6. Jones and the Stills raise the issue of whether the placement of traffic control devices was a discretionary act entitling MDOT and Tunica County to protection from suit under the Tort Claims Act. Jones and the Stills claim that the placement of traffic control devices is mandated by statute and therefore is not covered under the discretionary acts exemption to the Tort Claims Act; MDOT and Tunica County disagree.

¶7. Miss. Code Ann. § 11-46-9(1)(d), an exception to the Tort Claims Act's waiver of immunity, entitles a governmental entity to immunity where the conduct complained of involves the exercise of discretion.[2] However, the Tort Claims Act does not define "discretion." In interpreting a statute which is given to more than one interpretation, this Court is to give effect to legislative intent. *Pegram v. Bailey*, 708 So. 2d 1307, 1314 (Miss. 1997) (quoting *McMillan v. Puckett*, 678 So. 2d 652, 657 (Miss. 1996) (Banks, J.

dissenting)). In so doing, words which have no statutory definitions are to be assigned their ordinary and customary meanings. *Id.*

¶8. Prior to the abolishment of judicially created sovereign immunity in *Pruett v. City of Rosedale*, 421 So.2d 1046 (Miss. 1982), this Court utilized two tests to determine immunity issues. The governmental/proprietary function test was used to determine whether a municipality was entitled to immunity. In *Parker v. City of Philadelphia*, 725 So. 2d 782, 784 (Miss. 1998), this Court stated that:

> Under pre-*Pruett* common law, whether a city "enjoys the defense of sovereign immunity depends upon whether the alleged conduct occurred in the exercise of a governmental function or in the exercise of a proprietary function." *Morgan* [*v. City of Ruleville*, 627 So. 2d 275, 279 (Miss.1993)]; *Webb v. Jackson*, 583 So. 2d 946, 952 (Miss.1991). A city performing a governmental function is immune from a negligence suit, whereas a city performing a proprietary function is not immune from a negligence suit. *Morgan*, 627 So. 2d at 279; *Webb*, 583 So. 2d at 952.

However, this test is not applicable to the state and its political subdivisions. *Mississippi Transp. Comm'n v. Rector*, 663 So. 2d 601, 602 (Miss. 1995) (holding that the governmental/proprietary test applies only to municipalities, not to the State or its political subdivisions); *Stokes v. Kemper County Bd. of Supervisors*, 691 So. 2d 391, 393 (Miss. 1997).

¶9. In determining whether government employees were entitled to qualified immunity, this Court utilized the discretionary/ministerial test. *Mohundro v. Alcorn County*, 675 So. 2d 848, 853 (Miss. 1996). Governmental employees are entitled to qualified immunity for discretionary acts. Under this test, conduct is ministerial, and not discretionary, if it is imposed by law and the performance of the duty is not dependent on the employee's judgment. *Barrett v. Miller*, 599 So. 2d 559, 567 (Miss. 1992). In two recent cases, *Lang v. Bay St. Louis/Waveland Sch. Dist.*, No. 97-CA-01612-SCT, 1999 WL 250977 (Miss. April 29, 1999) and *L.W. v. McComb Separate Mun. Sch. Dist.*, No. 97-CA-01465-SCT, 1999 WL 682076 (Miss. Sept. 2, 1999), this Court used the discretionary/ministerial test to determine whether the conduct complained of constituted discretionary acts under § 11-46-9.

¶10. The issue of what acts are discretionary under the statute has been addressed in other jurisdictions with similar discretionary act exemptions. Section 11-46-9 appears to be patterned after 28 U.S.C. § 2680 (a), the "discretionary function" exception to the Federal Tort Claims Act. The United States Supreme Court has recognized that the majority of acts in the day-to-day operations of governmental activities involve the exercise of some form of discretion, however, not all of these acts are protected under the exception. In determining the scope of the acts protected under the exception, the Supreme Court held that only those functions which by nature are policy decisions, whether made at the operational or planning level, are protected. *United States v. Gaubert*, 499 U.S. 315, 322 (1991). "[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 323 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)). In discerning whether a function is afforded immunity under the discretionary exception, it must first be determined whether the activity involved "an element of choice or judgment."*Gollehon Farming v. United States*, 17 F. Supp. 2d 1145, 1154 (D. Mont. 1998). If so, it must then be determined "whether the choice involved social, economic or political policy." *Id.*

¶11. In determining whether governmental conduct is discretionary so as to afford the governmental entity

immunity, this Court adopts the public policy function test as set out in *United States v. Gaubert*, 499 U.S. 315, 322 (1991). As noted in *Parker*, 725 So. 2d at 784, "[t]he classifications of those functions which are governmental and those which are proprietary are very general, and are often difficult to define."

¶12. In *Parker*, 725 So. 2d at 784, this Court employed the governmental/proprietary function test in holding that the placement of warning signs on a road is a governmental function, and therefore immune from suit. Also in *King v. City of Jackson*, 667 So. 2d 1315, 1316 (Miss. 1995), this Court held that "as a matter of public policy the decision of a city whether to place traffic or warning signs is a governmental function, not proprietary." The outcome would be the same under the public policy function test.

¶13. Jones and the Stills claim that read in conjunction, Miss. Code Ann. §§ 63-3-301, 63-3-303, 63-3-305, 63-3-805, 65-7-15, and specified provisions of the Manual on Uniform Traffic Control Devices ("MUTCD"), amount to a mandatory requirement for the placement of traffic control signs on Bowden Lost Lake Road.[(3)] However, the provisions cited by Jones and Still do not support a finding that the placement of traffic control signs on Bowden Lost Lake Road is mandatory.

¶14. First, when § 65-7-15 is read in conjunction with § 65-7-17 it becomes clear that the subsection refers to the placement of directional road signs as opposed to traffic control signs. Section 65-7-17 provides:

> § 65-7-17. Color and construction of sign or guide boards.
>
> All such sign or guide boards throughout the entire state shall be of uniform size, construction, color, and erection. ***Said sign or guide boards shall show thereon the next city, town, or village to be reached by following each fork of said road, and the distance to be traveled along such road to reach said city, town, or village***. All such sign or guide boards as may be erected at forks or crossroads on the main or trunk roads within such county shall indicate direction along said road and distance to the county seat of the county or the principal city, town, or village within said county, and the principal city, town, or village within next adjoining county located on such main or trunk roads.

(emphasis added). Therefore, § 65-7-15 does not apply to this action.

¶15. Second, § 63-3-805 places a burden on the driver to yield the right-of-way before entering a through highway; the statute further provides that ***when*** a STOP sign is present the driver is to observe the sign. The statute does not, however, mandate that the State or the County place a STOP sign at the intersection.

¶16. Third, neither § 63-3-301, § 63-3-303, § 63-3-305, nor the MUTCD mandate the placement of traffic control devices under the facts of this case. Section 63-3-301 directs the commissioner of public safety to adopt a manual and specifications for the uniform placement of traffic control signs and devices, it does not, however, mandate where traffic control signs and devices are to be placed. Although Mississippi has not formally adopted such a manual, this Court recognized in *Jones v. Panola County*, 725 So. 2d 774, 777-78 (¶¶9, 12-13) (Miss. 1998), that the MUTCD was the manual to be used in conformity with the statute.

¶17. Sections 63-3-303 and 63-3-305 direct the commissioner of public safety and the state highway commission and, when applicable, local authorities to refer to "the manual" for guidance on the placement of traffic control devices. However, §§ 63-3-303 and 63-3-305 both contain language indicating that the

placement of traffic control signs or devices is dependant upon the discretion of the responsible entity.

¶18. Application of the public policy function test, as discussed *supra*, requires that we determine: (1) whether the placement of traffic control devices involve an element of choice or judgment; and, if so (2) whether the choice or judgment involved social, economic or political policy. § 63-3-303 provides that:

> The commissioner of public safety and the state highway commission shall place and maintain such traffic-control devices conforming to its manual and specifications, upon all state and county highways *as it shall deem necessary* to indicate and to carry out the provisions of this chapter or to regulate, warn, or guide traffic.

(emphasis added). Similarly, § 63-3-305 provides:

> Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction *as they may deem necessary* to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications.

(emphasis added). The "deem necessary" language contained in the subsections indicate that the responsible entity has to make a judgment as to where or whether to place traffic control devices on a road. Therefore, the first step in the test is satisfied.

¶19. Having found that the placement of traffic control devices involves choice and/or judgment, the second step in the test requires a determination as to whether the choice and/or judgment involves public policy. This Court has previously determined that the placement of traffic control devices are based upon public policy considerations. ***King v. City of Jackson***, 667 So. 2d 1315, 1316 (Miss. 1995). Therefore, the second step of the test can also be answered in the affirmative.

¶20. Jones and the Stills claim that the MUTCD mandates placement of the traffic control devices. The MUTCD provisions cited by Jones and the Stills list circumstances which **may** warrant the placement of the STOP sign and set out the **intended** use for the T symbol sign. The provisions cited in no way mandate the placement of either a STOP sign or the "T" symbol sign. "As a general rule the word 'may,' when used in a statute, is permissive only, and operates to confer discretion, especially where the word 'shall' appears in close juxtaposition in other parts of the same Statute." [*Chandler v. City of Jackson Civil Serv. Comm'n*, 687 So. 2d 142, 145 (Miss. 1997)](#) (emphasis in original) (quoting 82 C.J.S. *Statutes* § 380 (1953)). Therefore, the placement of traffic control devices is in the discretion of the responsible entity.

¶21. Jones and the Stills claim, however, that MDOT and Tunica County are not entitled to immunity because they failed to consider whether traffic control devices were necessary on the road. Nevertheless, § 11-46-9 (1) (d) states that it exempts from the waiver of immunity not only the performance of those acts which are discretionary, but also the "failure to exercise or perform a discretionary function or duty." *See also* ***Harris v. Williamson County***, 835 S.W.2d 588, 592-93 (Tenn. Ct. App. 1992) (quoting ***Butler***, 798 S.W.2d at 782) ("'a governmental entity is immune from suit for failing to make the decision to install a traffic control device, since this would be a failure to exercise or perform a discretionary function.'"). This assignment of error is without merit; ***Butler v. City of Dyersburg***, 798 S.W.2d 776, 782 (Tenn. Ct. App. 1990) (holding that similar language in Tennessee statute granted immunity to misfeasance and nonfeasance) .

**c.**

¶22. Jones and the Stills also raise the issue of whether a governmental entity has a duty to warn of dangerous conditions of which it has notice. In 1996, one year after the accident in question, the Legislature amended § 11-46-9(1) to provide immunity for claims:

> (w) Arising out of the absence, condition, malfunction or removal by third parties of any sign, signal, warning device, illumination device, guardrail or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice;

This Court agrees with the finding of the trial court that, although the preceding subsection was not applicable to this action, it was an extension of an exemption subsumed in § 11-46-9(d), as opposed to the establishment of a new exemption. Even prior to the enactment of § 11-46-9(1)(w), a governmental entity had a duty to warn of a dangerous condition of which it has notice. In ***Coplin v. Francis***, 631 So. 2d 752, 755 (1994), this Court held that even where a government employee's actions are deemed to be discretionary, rather than ministerial, the question may remain as to whether the public was afforded adequate warnings of the dangerous condition.

¶23. We have held that:

> Miss. Code Ann. § 11-46-9 requires a minimum standard of ordinary care be exercised by the government actor in order to raise the statutory shield:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

> ....

> (b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;

> Miss. Code Ann. § 11-46-9(1)(b) (emphasis added). Under this statute, as long as ordinary care is used while performing a statutory duty, immunity exists. But when the state actor fails to use ordinary care in executing or performing or failing to execute or perform an act mandated by statute, there is no shield of immunity.

> \* \* \* \*

> Federal law also supports our conclusion. Applying a similarly worded exception to the FTCA, a federal district court has held:

> The discretionary function exemption is intended to protect public policy objectives. (citations omitted.) It would run counter to the discretionary function exemption to second-guess or micro-manage the kinds of steps appropriate to maximize safety in government facilities, even where the decisions are made below the policy level. ***United States v. Gaubert***, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Within that broad discretion, reasonable steps of a type determined

by management to minimize risks of personal injury are necessary. Failure to take any such steps where feasible is negligent and not within the discretionary function exemption, even though the particular nature of the appropriate steps is discretionary. ***Andrulonis v. United States***, 952 F.2d 652 (2d Cir.1991); *see also* ***Indian Towing v. United States***, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955).

***L. W. v. The McComb Separate Mun. Sch. Dist.***, No. 97-CA-01465-SCT (¶ 24, 27), 1999 WL 682076, *6-8 (Miss. Sept. 2,1999) (emphasis added) (quoting ***Wright v. United States***, 866 F.Supp. 804, 806 (S.D.N.Y.1994)).

¶24. Additionally, the decision to build a road and the initial placement of traffic control devices is of the planning nature, involving public policy considerations. ***Bailey Drainage Dist. v. Stark***, 526 So. 2d 678, 681 n.2 (Fla. 1988). However, once the road is built and the responsible entity becomes aware of a dangerous condition in connection with the road, the duty becomes one of maintenance. ***Id.*** Therefore, MDOT and Tunica County were required to use due care in the exercise of their discretion.

¶25. MDOT and Tunica County were entitled to a Rule 12(b)(6) dismissal only if "'it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief.'" ***Butler v. Board of Sup'rs,*** 659 So. 2d 578, 581 (Miss. 1995) (quoting ***Overstreet v. Merlos***, 570 So. 2d 1196, 1197 (Miss.1990)). Here, Jones and the Stills claim that MDOT and Tunica County negligently failed to warn of the danger created by the reopening of Irwin Place Road. Jones and the Stills also claim that MDOT and Tunica County had knowledge of the dangerous intersection. Given these factual allegations, it was reversible error for the trial court to grant MDOT's and Tunica County's motion to dismiss.

**d.**

¶26. Jones and the Stills next raise the issue of whether § 11-46-9(d) violates the fourteenth amendment of the U.S. Constitution and the Remedy Clause of the Mississippi Constitution, Article 3, Section 24, which guarantees that individuals shall have access to courts to redress their injuries.

¶27. The issue of whether sovereign immunity, as a whole, comports with the dictates of Mississippi's Remedy Clause was addressed in ***Mohundro v. Alcorn County***, 675 So.2d 848, 851 (Miss. 1996). In ***Mohundro***, this Court held that the codification of the doctrine of sovereign immunity did not deprive a party of any remedy or property right "since the plaintiff had no right to recovery against government entities at common law due to sovereign immunity." ***Id.*** (quoting ***Wells v. Panola County Bd. of Educ.***, 645 So.2d 883, 891 (Miss. 1994) and ***Grimes v. Pearl River Valley Water Supply Dist.***, 930 F.2d 441, 443-44 (5th Cir. 1991)). It was recognized in ***Robinson v. Stewart***, 655 So. 2d 866, 869 (Miss. 1995), that the scope of limitations on suits against the State was a matter to be addressed by the legislature.

¶28. In regard to Jones's and the Stills' claim that § 11-46-9 (1)(d) is violative of the fourteenth amendment of the United States Constitution, using the rational basis test, the Fifth Circuit held that:

> At least two circuit courts have held an immunity statute does not violate the Equal Protection Clause merely because immunity is granted to some agencies or parties and not to others. *See* ***Kranson v. Valley Crest Nursing Home***, 755 F.2d 46 (3d Cir.1984); ***Aubertin v. Board of City Comm'rs***, 588 F.2d 781 (10th Cir.1978). It is rational for the legislature to provide sovereign immunity to the

PRWD in order to advance the legislative purpose of the agency (§ 51-9-103) or because the agency's source of revenue is limited and must be used for purposes prescribed by the legislature (§§ 51-9-121, 125, 131, 133-39, 141-47). Plaintiffs have not shown us how this scheme is irrational and we cannot conceive how they could meet this burden. Accordingly, the statutory scheme does not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Due Process Clause is violated, according to plaintiffs, because the sovereign immunity statute prevents then from prosecuting their claims against the PRWD for the death of their daughter. This claim, being deprived of your day in court, involves the concept of Procedural Due Process. To prevail, plaintiffs must prove (1) they were deprived of a protected property interest and (2) they were denied the process due them. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed. 2d 265 (1982).

Plaintiffs brief on this issue almost entirely complains that sovereign immunity is an unjust doctrine and should be abolished. They cite law reviews, treatises and other legal authority for support. What they fail to tell us is the property interest of which they were deprived. We assume, as do defendants, the property interest to which they are referring is the right to bring a wrongful death action on behalf of their now deceased daughter. Property interests are created and defined by state law. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Although the state wrongful death statute may have created this cause of action or property interest, the sovereign immunity statute defined the property interest. In essence, the property interest involved in the case at bar is not protected because the PRWD is the defendant. State law does not allow suit against the PRWD. *See French*, 394 So. 2d at 385.

Further, even if there were a protected property interest, plaintiffs were not deprived the process that was due them. They had plenty of opportunity to contest the sovereign immunity scheme during the legislative process. The legislature provided all the process that was due. *See Logan*, 455 U.S. at 432-33, 102 S.Ct. at 1155-56 (citing *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)). Consequently, no violation of Procedural Due Process occurred.

*Grimes*, 930 F.2d at 444. Jones and the Stills in no way argue that there is no rational basis for the codification of sovereign immunity. Nor, as discussed previously, have they been deprive of any remedy or protected property interest. This assignment of error is without merit.

**CONCLUSION**

¶29. For the above and foregoing reasons, the order of the trial court is reversed, and these cases are remanded for further proceedings consistent with this opinion.

¶30. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. A "T" intersection is formed where two roads meet at the end of one of the roads forming a "T"; and the driver must make either a right or a left turn.

2. Miss. Code Ann. § 11-46-9(1)(d) provides:

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

. . . .

(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;

3. Jones and the Stills claim that the following statutes and excerpt from the MUTCD support a finding that the placement of traffic control devices is statutorily mandated.

§ 63-3-301. Adoption of uniform system of traffic-control devices.

The commissioner of public safety shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter for use upon highways within this state. Such uniform system shall correlate with and so far as possible conform to the system then current as approved by the American Association of State Highway Officials.

§ 63-3-303. Placing and maintaining of traffic-control devices upon state and county highways; placement of devices upon such highways by local authorities.

The commissioner of public safety and the state highway commission shall place and maintain such traffic-control devices conforming to its manual and specifications, upon all state and county highways as it shall deem necessary to indicate and to carry out the provisions of this chapter or to regulate, warn, or guide traffic.

No local authority shall place or maintain any traffic-control device upon any highway under the jurisdiction of the commissioner of public safety and the state highway commission except by the latter's permission.

§ 63-3-305. Placing and maintaining of traffic-control devices upon highways under local jurisdiction.

Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications.

Local authorities in exercising those functions referred to in the preceding paragraph shall be subject to the direction and control of the state highway commission.

§ 63-3-805 Vehicle entering through highway.

The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard. However, said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so

proceeding into or across the through highway.

The driver of a vehicle shall likewise stop in obedience to a stop sign as required by this chapter at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed.

§ 65-7-15. Board of supervisors to erect signs.

The board of supervisors of the several counties of the state shall forthwith erect or cause to be erected, at all forks, crossroads or road intersections on all of the state highways and all other principal roads within their county, sign or guide boards in compliance with specifications theretofore furnished by the state highway department or state highway engineer.

MUTCD § 2B-5 Warrants for Stop Sign

Because the STOP sign causes a substantial inconvenience to motorists, it should be used only where warranted. A STOP sign may be warranted at an intersection where one or more of the following conditions exist:

1. Intersection of a less important road with a main road where application of the normal right-of-way rule is unduly hazardous.

2. Street entering a through highway or street.

3. Unsignalized intersection in a signalized area.

4. Other intersections where a combination of high speed, restricted view, and serious accident record indicates a need for control by the STOP sign.

MUTCD § 2C-13 T Symbol Sign (W2-4)

The T symbol sign is intended for use to warn traffic approaching a T-intersection on the road that forms the stem of the T, i.e., where traffic must make a turn either to the right or to the left. The sign should not generally be used on an approach where traffic is required to stop before entering the intersection, nor at a T-intersection that is channelized by traffic islands, nor where Junction signing or Advance Turn Arrows are present.

The relative importance of the intersecting roads may be shown by different widths of line in the diagram.

It may be desirable to place a double-headed Large Arrow sign at the head of the T, directly in line with approaching traffic (sec. 2C-9).