Clyde A. SWAFFORD and wife, Mary Swafford, Plaintiffs–Appellees,

v.

CITY OF CHATTANOOGA and Clara Mae Terry, Defendants–Appellants.

Court of Appeals of Tennessee, Eastern Section.

Aug. 18, 1987.

Permission to Appeal Denied by Supreme Court Nov. 30, 1987.

5

W. Lee Maddux and Randall L. Nelson, Chattanooga, for defendant-appellant, City of Chattanooga.

Jeffrey D. Boehm, Gentry & Boehm, Chattanooga, for plaintiffs-appellees.

Stephanie R. Reevers, Asst. Atty. Gen., Nashville, for the Attorney General of the State of Tennessee.

## OPINION

ANDERSON, Judge.

This is an appeal from the trial court's judgment for damages for personal injury and property damage in favor of Plaintiff-Appellee Clyde A. Swafford against Defendant-Appellant City of Chattanooga, and denying recovery to Plaintiff-Appellee Mary Swafford under the provisions of T.C.A. § 29-20-101 et seq., the Tennessee Governmental Tort Liability Act. We affirm the decision of the trial court regarding Mr. Swafford's recovery, reverse its decision regarding Mrs. Swafford's recovery, and remand.

### I.

On Monday, August 1, 1983, Plaintiffs-Appellees, Clyde and Mary Swafford, were traveling west on East Third Street in Chattanooga, Tennessee. East Third Street is a four-lane street east of its intersection with Central Avenue, having two lanes of traffic in each direction. Because of traffic congestion around Erlanger Hos-

pital, the City had decided to widen East Third Street west of Central Avenue to include two lanes of traffic in each direction and a turning lane in the middle. The City accomplished this widening by adding an additional lane to the north side of East Third Street. Westbound traffic was to move to the right where it entered the newly-widened section in order to allow room for the new turning lane.

Wesco Company was awarded the contract to pave the newly-widened portion and completed its paving on Thursday, July 28, 1983. The only remaining project work was for the City of Chattanooga to install proper signs and pavement markings to channel the traffic. Because the City owned only one paint striping truck, it could not paint both white and yellow markings at the same time. By the end of the working day on Friday, July 29, the City had painted the solid white stripes delineating the extreme edges of the newly-paved section, and had painted the interrupted white stripes delineating the boundaries between the inside and outside lanes of traffic on each side of the street. In addition, the City apparently had painted unbroken white stripes delineating the right-hand side of the newly established left-turn lane at its intersections with Central Avenue and with Wiehl Avenue. The City, however, had not painted the solid and interrupted yellow lines that were to define the boundaries between the new turning lane and each of the inside lanes, and had not painted the large white arrows indicating left turns only from the inside westbound lane of East Third at Central. The result was that during the weekend of July 30th and 31st, traffic westbound on East Third Street, after crossing Central Avenue, entered a new five-lane section of the street that had only the extreme outside lanes of traffic properly defined by permanent markings. Westbound traffic in the left-hand lane of East Third moved into the middle of a thirty-two-foot wide section of unmarked, newly-paved street, while traffic in the right-hand lane moved into the unmarked, newly-paved left-hand lane. Temporary paint "daubings" had

been marked in the locations where the permanent yellow lines were to define the middle three lanes, but there was no other evidence that any measures had been taken to define the lanes or to warn motorists of the free-for-all traffic flow.

The Swaffords were westbound in their pickup truck-camper on East Third Street and, as they crossed Central Avenue, moved into the new right-hand lane. Mr. Swafford, who was driving, then signaled left and moved into what he estimated to be the left lane. He then signaled again and moved into the approximate middle of the newly-paved section, and came to a stop with his turn signal on, preparing to turn into a parking lot on the south side of the street. Mr. Swafford waited for a short time for oncoming traffic to clear, checked his rear-view mirror, and then began his left turn. As he began the turn, Defendant Clara Mae Terry, apparently in the process of trying to pass the Swaffords, struck their truck on the left front side, damaging the truck and injuring Mr. Swafford.

The Swaffords sued the City, Wesco Company, and Ms. Terry, seeking damages for Mr. Swafford's injuries, for the damage to the pickup truck, and for Ms. Swafford's loss of consortium. Ms. Terry then filed a counter-claim against Mr. Swafford, Wesco Company, and the City for property damage to her automobile. Both the Swaffords and Ms. Terry demanded jury trials. Pursuant to the terms of T.C.A. § 29–20–313(b)[1], the trial court severed the suit against the Defendant City from the suits involving the private defendants. Following the trial, the court awarded a judgment against the City in favor of Mr. Swafford for $40,000 for his injuries, and $5,000 for the damage to his pickup truck. The court awarded Ms. Swafford nothing, and dismissed the complaint of Ms. Terry against the City. The City appealed that judgment to this Court, but we dismissed the appeal and remanded because there was no showing in the record of the disposition of the suit of the Swaffords against Wesco and Ms. Terry, or the counter-suit of Ms. Terry against Wesco and the Swaffords. Following our remand, the Swaffords and Ms. Terry entered an Order of Non-suit as to Wesco. A jury trial was then conducted between the Swaffords and Ms. Terry, resulting in a jury award of $40,000 to the Swaffords and $1,000 to Ms. Terry, with a jury finding that Ms. Terry was negligent and that Mr. Swafford was contributorily negligent. This inconsistent verdict was never reduced to final judgment. The City then filed a motion for new trial in the action against it, and the Swaffords and Ms. Terry each filed motions for new trial in their jury action. The City's motion was denied, Ms. Terry's motion was denied, but the Swaffords' motion against Ms. Terry was granted. A subsequent trial between the Swaffords and Ms. Terry resulted in a mistrial. Finally, the Swaffords and Ms. Terry entered a joint Order of Dismissal between themselves only. The record thus reflected a proper adjudication of all the claims between all the parties, and the City's appeal is now properly before this Court.

## II.

The City suggests that this entire action is barred under T.C.A. § 29–20–205(1) (1980). That section creates an exception to the removal of immunity from suit where the negligent act or omission of a governmental employee "arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused." The City's argument fails for two reasons. First, although the trial court discusses the issue of discretionary functions, it is apparent that its award to

---

**1.** (b) Where there are multiple defendants to a lawsuit and the plaintiff is entitled to a jury trial as to one (1) or more of such defendants and is not as to others, the court shall sever the trial of those defendants for which the plaintiff may demand a jury trial from those for which he may not.

Following a severance in accordance with this subsection, the plaintiff shall elect which group of defendants he wishes to proceed to trial with first.

Mr. Swafford is based on T.C.A. § 29–20–203(a) (1980 and Supp.1986), which removes governmental tort immunity "for an injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity." The section goes on to say that "the terms 'street' and 'highway' shall include traffic control devices thereon," but it does not create an exception for discretionary functions.

Second, even if the trial court had found (which it did not) that the injuries here were "proximately caused by a negligent act or omission of any employee" of the City under § 29–20–205, we would not find that the placing of traffic control lanes on a five-lane thoroughfare that served, as the proof shows, 11,500 cars per day is a discretionary function. The City refers us to *Davis by Davis v. City of Cleveland*, but that case does not support the City's position. In *Davis*, this Court found that since a yellow caution light timing sequence "was set within the range prescribed by the state manual on traffic devices, ... [it] represented a judgment call by the person responsible for such setting in the exercise of his professional judgment, and [was] thus a discretionary act within the meaning of T.C.A. § 29–20–205(1)." 709 S.W.2d 613, 615 (Tenn.App.1986).

■ Here, the City's engineer suggested that, as a general rule, temporary paint "daubings" would be sufficient to channel traffic on the widened, newly-paved portion of the street, but he did not personally observe the daubings that had been applied. The City's paint truck operator, who eventually did paint the permanent yellow stripes, observed the daubings but was specifically looking for them; they were there to guide him in placing the permanent stripes. All other witnesses—Mr. Swafford, Ms. Swafford, Ms. Terry, the City police officer investigating the accident, and a pedestrian passerby—testified that they did not see the daubings. There is no evidence that the use of such daubings is within any "range" of safety prescribed by the Manual on Uniform Traffic Control Devices, the manual relied upon by both sides

at trial. In a similar case recently addressed by this Court, we held that a county "may have had the discretion initially whether or not to construct [a road]; however, once the road was constructed, the county obligated itself to maintain the road's surface in a reasonably safe condition." *Baker v. Seal*, 694 S.W.2d 948, 950 (Tenn.App.1984). We think that the same obligation applies to the City of Chattanooga, and find, as a matter of law, that the failure to adequately delineate traffic flow, or to warn of the absence of adequate delineation, on a five-lane thoroughfare handling 11,500 cars per day, is "a defective, unsafe, or dangerous condition" under T.C.A. § 29–20–203(a).

■ The City contends that the trial court erred in allowing into evidence the testimony of police officer Lon Eilders regarding the condition of the roadway. The City asserts that, had Officer Eilders not been allowed to describe the condition of the road as "hazardous" and "dangerous," the trial court would have found that the sole proximate cause of the accident and resulting injuries was the negligence of Ms. Terry or Mr. Swafford. We disagree. The record does not suggest that the trial court considered Officer Eilders' testimony in reaching its decision, and absent Officer Eilders' testimony, the preponderance of evidence still supports the trial court's finding that the negligence of the City and the contributory negligence of Ms. Terry were the sole proximate causes of the accident.

■ We also find no error in the trial court's denying the City's motion for new trial following the jury verdict in the initial action between the Swaffords and Ms. Terry. That case resulted in inconsistent verdicts that awarded damages to each party while finding Ms. Terry negligent and Mr. Swafford contributorily negligent. That verdict was never reduced to final judgment, the next trial between Ms. Terry and the Swaffords ended in a mistrial, and finally Ms. Terry and the Swaffords took non-suits as to each other. The severed action between Ms. Terry and the Swaffords no longer exists, and thus affords no basis for granting the City's motion for new trial. Further, the City did not take

issue with the trial court's granting the non-suit, and has thus waived any objection to it.

■ The City also raises the issue of the constitutionality of the General Assembly's having increased the limits of liability under the Governmental Tort Liability Act by Chapter 950 of the Public Acts of 1982. Article 2, Section 24, of the Constitution of Tennessee directs that "no law of general application shall impose increased expenditure requirements on cities or counties unless the General Assembly shall provide that the State share in the cost. The City argues that the General Assembly's having raised the liability limits from $20,000 to $40,000 imposes increased expenditure requirements on Chattanooga without the General Assembly's providing that the State share in the cost." We do not agree. The General Assembly's having raised the liability limits indicates a legislative intent to provide a greater remedy to the citizens of this State and others who are injured at the hands of negligent local governments. This, however, is not an "increased expenditure requirement" imposed on the cities or counties of this State. The only "expenditure requirements" would be those that result solely from the negligent acts or omissions of a city or county itself; the Act does not require cities and counties to commit those negligent acts or omissions. The increased limits of liability of T.C.A. § 29–20–403(a), (c) do not conflict with Article 2, Section 24, of the State Constitution.

Finally, the Swaffords question on appeal whether the trial court erred in holding that Ms. Swafford could not be awarded judgment for her loss of consortium because Mr. Swafford's award of $40,000 for his personal injuries had exhausted the liability limitations of § 29–20–403(a), (c). Regarding this issue, the trial court held as follows:

There is no room left for any award for Ms. Swafford, although if we did not have limitations, the court would award a judgment to her for loss of services and consortium, and I suspect for the record I would say that I would award Mrs. Swafford probably $5,000 were it within my power.

. . . .

. . . It's the judgment of the court that since the maximum limitation in these cases is $40,000 and Mrs. Swafford's claim is a derivative claim that although entitled to a judgment under the evidence, by law, she shall not recover of the City of Chattanooga.

T.C.A. § 25–1–106 (1980) says that "there shall exist in cases where such damages are proved by a wife, a right to recover for loss of consortium."

Consortium, although it embraces within its ambit of meaning the wife's material services, also inclues love, affection, companionship, sexual relations . . . all welded into a conceptualistic unity.

. . . .

. . . Invasion of the consortium is an independent wrong directly to the spouse so injured.

*Hitaffer v. Argonne Co.*, 183 F.2d 811, 814–815 (D.C.Cir.1950).

Consortium has been defined as:

'. . . the conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection and aid of the other in every conjugal relation.'

. . . loss of consortium is a right of action separate from that of the husband for his damage, . . . loss of services is a part of the loss of consortium, and . . . both loss of services and loss of consortium must be proven by the wife.

*Manning v. Altec, Inc.*, 488 F.2d 127, 132 (6th Cir.1973).

■ Although a husband's or wife's claim for loss of consortium will always be "derivative" in the sense that the injuries to his or her spouse are an element and must be proved, the right to recover for loss of consortium is a right independent of the spouse's right to recover for the injuries themselves. The Tennessee Governmental Tort Liability Act reads in pertinent part as follows: " 'injury' means death, injury to a person, damage to or loss of property or any other injury that a person may suffer to his person, or estate, that would be actionable if inflicted by a private person or his agent." T.C.A. § 29–20–102(4) (1980 and Supp.1986). Although § 29–20–403 refers only to "bodily injury or death" in setting the minimum

limits of liability coverage under the Act, we think that the specific removal of immunity upon which recovery here rests—that of removal of immunity for injury from unsafe streets and highways of § 29–20–203—controls. It reads that "immunity from suit of a governmental entity is removed for *any injury* caused by defective, unsafe, or dangerous condition...." (emphasis added). To hold that the language "bodily injury or death" of § 29–20–403 controlled would create an exception to the clear removals of immunity created by §§ 29–20–201, –202, –203, –204, and –205. We therefore remand this case to the trial court to award judgment to Ms. Swafford for her damages due to loss of consortium.

The decision of the trial court awarding Clyde Swafford judgment of $40,000 for personal injury and $5,000 for property damage is affirmed, the trial court's decision denying Ms. Swafford recovery for her damages due to loss of consortium is reversed, and the case is remanded for further proceedings not inconsistent with this opinion. Costs are taxed to the Appellant.

GODDARD, J., and WILLIAM H. INMAN, Special Judge, concur.