IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 26, 2006 Session

**SETH ZAMEK, ET UX. v. SEAN O'DONNELL, ET AL.**

**Direct Appeal from the Circuit Court for Madison County**
**No. C-04-395     Roy B. Morgan, Judge**

_____

**No. W2006-00522-COA-R3-CV - Filed January 16, 2007**

_____

This case involves an automobile accident that occurred on a road maintained by Madison County. The plaintiff sued the negligent driver who struck his vehicle, the other driver's parents, and Madison County. Relevant to this appeal, the plaintiff alleged that the design of the road and inadequate signs and road markings contributed to the accident. The trial court granted summary judgment to Madison County, finding that it was immune from suit under the Tennessee Governmental Tort Liability Act. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Lewis L. Cobb, John D. Stevens, Jackson, TN, for Appellants

James I. Pentecost, Jon A. York, Jackson, TN, for Appellees

# OPINION

## I. FACTS & PROCEDURAL HISTORY

On December 14, 2003, Sean O'Donnell and Seth Zamek ("Mr. Zamek" or "Appellant") were involved in a car accident in Madison County. The accident occurred near the intersection of Old Bells Road and Bells Highway. A "spur" road connects the two main intersecting roads and allows southbound traffic to bypass the intersection.[1] Mr. O'Donnell had been traveling southward on Old Bells Road toward the intersection. Before reaching the intersection, he attempted to make a left turn onto the spur. O'Donnell had been following behind a large van, and in a deposition, he explained that he "couldn't see anything around it." As he made the left turn, he saw Mr. Zamek's vehicle in the oncoming lane. Mr. Zamek had just proceeded through the intersection and was heading north on Old Bells Road. Mr. O'Donnell claimed that he slammed on his brakes and swerved to avoid Mr. Zamek, but the two vehicles collided.

Mr. Zamek and his wife filed a complaint in the Circuit Court of Madison County seeking recovery for his personal injuries and property damages. They alleged various acts of negligence were committed by Mr. O'Donnell in failing to safely operate his vehicle. The complaint also set forth claims against his mother and step-father, Sherri and David Trosper, for negligent entrustment of the vehicle and liability under the family purpose doctrine. It appears that Mr. O'Donnell was eighteen years old at the time of the accident. Finally, the Zameks claimed that Madison County ("Appellee") was responsible for creating and maintaining the intersection where the collision occurred, and that Mr. Zamek's injuries were caused "in part by the defective design and maintenance of the roads in [the] area, which created an unsafe and dangerous condition in violation of T.C.A. § 29-20-203."

Relevant to this appeal, Madison County filed a Motion for Summary Judgment arguing that its immunity had not been removed under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq.*, and also claiming that O'Donnell's negligence was the sole proximate cause of the accident. The County contended that it was immune from suit because the Zameks had not presented any evidence establishing that the road was dangerous, defective or unsafe, nor had they shown that the County had notice of any such condition. Also, the County argued that any decision with respect to the design of the intersection would be a discretionary function on its part, for which the County is immune from suit. In response, the Zameks presented the affidavit of Dr. Robert Stammer, a civil engineering professor at Vanderbilt University, who opined that the intersection was "dangerous, confusing, and negligently designed." A hearing on the

---

[1] Bells Highway runs east and west, and Old Bells Road runs north and south. Old Bells Road as originally constructed curved to the left and followed through what is now the "spur." When a nearby U.S. highway was built between 1998 and 1991, an intersection was constructed and Old Bells Road was extended so that it now continues on a straighter path, but slightly curving to the right, to meet the intersection and then continue on toward the new highway. The result could be called a "Y," but traffic is to continue to the right and stop at the intersection. The original curve of the roadbed remains in use as the "spur," but traffic must take a left turn onto it and yield to oncoming traffic from the intersection.

Motion for Summary Judgment was held on November 8, 2005, and the court granted Madison County's motion by order on December 1, 2005. On February 7, 2006, the trial court certified the order granting summary judgment to Madison County as final pursuant to Tenn. R. Civ. P. 54.02. The Zameks filed their notice of appeal to this Court on March 6, 2006.

## II. ISSUES PRESENTED

Appellants have timely filed their notice of appeal and present the following issues, as we perceive them, for review:

1.  Whether the trial court erred in granting Madison County's motion for summary judgment because Dr. Stammer's opinion that "weak" centerline striping created a dangerous, unsafe and defective condition of the road created a genuine issue of material fact;
2.  Whether the trial court erred in granting Madison County's motion for summary judgment because a genuine issue of material fact existed with respect to whether the County had notice of the defective, unsafe and dangerous conditions on the road; and
3.  Whether it was reversible error for the trial court to rule that Madison County's actions in maintaining the road were discretionary acts under T.C.A. § 29-20-205.

Additionally, Appellee presents the following issue for review:

4.  Whether summary judgment is proper on the alternative ground that Co-Defendant Sean O'Donnell was the sole proximate cause of the accident and was completely at fault.

For the following reasons, we affirm the decision of the circuit court.

## III. STANDARD OF REVIEW

No presumption of correctness attaches to a trial court's findings in a summary judgment case. ***Burgess v. Harley***, 934 S.W.2d 58, 62 (citing *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995)). A summary judgment is appropriate only when there is no genuine dispute of material fact with regard to the claim or defense asserted in the motion, and when the moving party is entitled to a judgment as a matter of law. ***Id.*** (citing *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993)).

The critical focus is limited to those facts deemed "material," meaning facts that must be decided in order to resolve the substantive claim or defense at which the motion is directed. ***Byrd v. Hall***, 847 S.W.2d 208, 211 (Tenn. 1993). We must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. ***Id.*** at 210-11 (citations omitted). A court is not to weigh the evidence in evaluating a summary judgment motion. ***Id.*** at 211. A summary judgment should not be affirmed if any doubt or uncertainty exists with regard to the facts or the conclusions to be drawn

from the facts. **Burgess**, 934 S.W.2d at 62 (citing *Carvell*, 900 S.W.2d at 26; *Byrd*, 847 S.W.2d at 211). When the evidence establishes a disputed fact, and the fact is material, the court must then determine whether the disputed material fact creates a genuine issue. **Byrd**, 847 S.W.2d at 215. The test for a "genuine issue" is whether a reasonable jury could legitimately resolve that fact in favor of one side or the other. **Id.**

"[T]he party seeking summary judgment must carry the burden of persuading the court that no genuine and material factual issues exist and that it is, therefore, entitled to judgment as a matter of law." **Byrd**, 847 S.W.2d at 211. One may move for summary judgment on the ground that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for directed verdict. **Id.** at 213. When the party seeking summary judgment makes a properly supported motion, the nonmoving party must affirmatively demonstrate with specific facts that there is indeed a genuine and material factual dispute. **Id.** at 215. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." **Id.** (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-55, 106 S.Ct. 2505, 2511-13, 91 L.Ed.2d 202 (1986)). Summary judgment will be appropriate when, after being given a reasonable opportunity to substantiate its claims, the nonmoving party is unable to establish an essential element of its case on which it will have the burden of proof at trial. **Id.** (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-25, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)).

## IV. DISCUSSION

Tennessee's Governmental Tort Liability Act provides, in pertinent part, that:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn. Code Ann. § 29-20-201(a) (2000). Prior to the implementation of the Act, we adhered to the common law doctrine of sovereign immunity, which protected the State and certain of its subdivisions from liability for damages caused by its tortious acts. **Kirby v. Macon County**, 892 S.W.2d 403, 406 (Tenn. 1994). Therefore, the passage of the Act was "an act of grace" by which the legislature provided general immunity to governmental entities from tort liability but removed it in certain limited and specified instances. **Id.** For example, immunity is removed for any injury caused by a defective, unsafe, or dangerous condition of a street if the governmental entity had constructive or actual notice of the condition (Tenn. Code Ann. § 29-20-203), and for an injury caused by the negligent act of an employee unless the act arose out of the exercise of a discretionary function (Tenn. Code Ann. §29-20-205(1)).

-4-

In their complaint, the Zameks alleged that the collision was "caused in part by the defective design and maintenance of the roads . . . which created an unsafe and dangerous condition in violation of T.C.A. § 29-20-203." In the County's Memorandum in Support of its Motion for Summary Judgment, it argued that immunity had not been removed under §29-20-203, and it also contended that its decisions regarding the intersection were immunized discretionary functions pursuant to §29-20-205. Both parties have analyzed both sections on appeal.

When a party relies on a particular section of the Governmental Tort Liability Act as the basis for a lawsuit, the courts are not bound by the party's designation. *Helton v. Knox County*, 922 S.W.2d 877, 880 (Tenn. 1996). If the facts of the case and the essence of the complaint make another section of the Act applicable, the court may analyze the case under that other section in addition to, or instead of, the original section relied upon by the parties. *Id.* (citing Tenn. R. App. P. 13(b), 36(a); *Nance v. Westside Hosp.*, 750 S.W.2d 740, 744 (Tenn. 1988); *City of Memphis v. Int'l Bhd. of Elec. Workers Union*, 545 S.W.2d 98, 100 (Tenn. 1976)). The trial judge stated that he had considered the parties' arguments under both sections in reaching his decision to grant the County's summary judgment motion. In addition, he noted that "[a]ny issues raised by Plaintiff in this situation, possibly under 29-20-205, would be discretionary." Therefore, we find it necessary to address the County's immunity under both sections of the Act.

The issue of immunity under each exception is a separate matter entirely. *Helton*, 922 S.W.2d at 882. The application of one of the immunity exceptions does not necessarily preclude the application of another. *Kirby*, 892 S.W.2d at 406. It is conceivable that either of these provisions might apply to remove the County's immunity, or that no exception will apply and the County's immunity will be preserved. *Id.* The County's liability for injuries under § 29-20-203 caused by a defective, unsafe, or dangerous street condition is not subject to a "discretionary function exception" by incorporating § 29-20-205. *Id.* In other words, even if the decision to keep the "spur" road open was a discretionary function for which the County was immune under §29-20-205, it is possible that the design may have rendered the road so defective, unsafe, or dangerous that immunity would be waived under §29-20-203 if the County had notice of the dangerous condition. *See Helton*, 922 S.W.2d at 882.

### A.    Tenn. Code Ann. § 29-20-203 – Unsafe Streets

The first immunity exception we will address is set forth in Tenn. Code Ann. § 29-20-203, entitled "Removal of immunity for injury from unsafe streets and highways – Notice required." The statute provides:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.

> (b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302 [repealed].

Tenn. Code Ann. § 29-20-203 (2000). Under this section, there are three essential ingredients for a suit brought against a governmental entity. ***Burgess***, 934 S.W.2d at 63. First of all, the local government must own and control the location or instrumentality alleged to have caused the injury. ***Id.*** Second, the location must be "defective, unsafe, or dangerous." ***Id.*** Third, the local government must have "constructive and/or actual notice" of the defective, unsafe, or dangerous condition of the location. ***Id.*** It is this third element that we consider to be dispositive of the Zameks' claim against the County. We find that no genuine issue existed regarding the County's lack of notice of an unsafe, dangerous, or defective condition at the intersection.

"Actual notice" has been defined as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." ***Kirby***, 892 S.W.2d at 409 (quoting *Texas Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn. 1950)). "Constructive notice" includes "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." ***Id.*** (quoting *Black's Law Dictionary*, 1062 (6th ed. 1990)).

In the present case, in support of its Motion for Summary Judgment, the County presented the affidavit of Mr. Scotty Plunk, the Regional Construction Supervisor for the Tennessee Department of Transportation ("TDOT"). Mr. Plunk stated that TDOT had undertaken a road construction project in 1988 involving the nearby U.S. Highway 412, and the project included the construction of the intersection and design of the spur at issue. He went on to explain that TDOT engineers had inspected and reviewed the roads during the project, and following its completion, the engineers approved and certified that the roads complied with TDOT regulations and specifications. Mr. Plunk stated that the intersection met TDOT specifications and requirements when it was relinquished to Madison County's ownership in 1991, and to the best of his knowledge, TDOT had received no complaints about the roadways during its ownership of the area roads.

In addition, the County presented the affidavit of its Highway Department's Chief Administrative Officer, Fred Bowyer. Mr. Bowyer stated that neither he nor his office had any record of ever receiving a complaint about the condition, design, or maintenance of the intersection and spur. He explained that the County had not altered the intersection since TDOT relinquished its control, and he disclaimed any knowledge of any condition at the intersection that would have required maintenance.

In support of its Motion for Summary Judgment, the County also relied upon the Zameks' responses to the County's request for admissions. The Zameks admitted that the signs at the intersection and spur were in place and were not overgrown with vegetation, and there were no obstructions on the roadway such as trees, limbs, or power lines. The Zameks also acknowledged that they had never complained to the County about the intersection prior to the accident.

In response to the County's Motion for Summary Judgment, the Zameks listed the following facts which they contended had imputed notice to the County of the defective condition of the intersection: (i) Old Bells Road is a county road as indicated by its listing on the county road list; (ii) the County has maintained the road and repaved nearby roads in 1998; and (iii) Mr. Bowyer has extensive knowledge of the area based on his ownership of some property in the area. Although these facts may demonstrate that the County would be aware of the road's layout or condition, there is no indication that the County had notice, actual or constructive, that the intersection was "defective, unsafe, or dangerous" from these facts. When TDOT constructed the intersection and relinquished its control in 1991, it had certified and approved it as being in compliance with state regulations. The County had not altered the intersection, so it had no reason to believe the intersection was not in compliance with the appropriate standards. The Zameks did not present evidence of any prior complaints regarding the intersection, and they did not allege that any prior accidents had occurred at the location.[2]

The Zameks argue that the lack of any record of complaints is not sufficient proof of a lack of notice, and they cite *Burgess* in support. In *Burgess v. Harley*, 934 S.W.2d 58, 65 (Tenn. Ct. App. 1996), a material factual dispute existed concerning a county's notice that an intersection was dangerous when the record contained evidence that the county had actual notice, but the county denied such notice. The plaintiff had presented the affidavits of three citizens who had complained to the county and who had introduced a petition with eighty signatures requesting the county to correct the problem. *Id.* The county had disclaimed knowledge of the condition, and on appeal, the

---

[2] The Zameks also pointed out that the original roadbed of Old Bells Road had not been substantively altered since it was built in 1920, and that it is unclear who had constructed the original Old Bells Road. They then argued that "if a road was constructed in the defective condition complained of and remains in that condition," then no notice is required and the entity that constructed the road is charged with notice of its condition. They cited *Glover v. Hardeman County*, 713 S.W.2d 73, 76 (Tenn. Ct. App. 1985) in support of this contention. However, the Zameks' claim is based on the spur road being defective in that it should have been closed when the nearby intersection was constructed between 1998 and 1991. There is no indication and the Zameks did not allege that the original road was defectively constructed in 1920.

In addition, our Supreme Court in *Kirby*, 892 S.W.2d at 409, found that the Court of Appeals had erroneously accepted this same argument when the plaintiff had not alleged that a structure was defective when originally built. The Court chose not to address the issue of whether a plaintiff may bypass the notice requirements of §29-20-203(b) by proving that a structure was defective when constructed. *Id.* However, the Court emphasized that even in *Glover*, the notice requirements were not bypassed because of the facts of that case. *Id.* A road commissioner had made a conscious choice not to take certain data into account when constructing a culvert, and therefore he should have been on inquiry notice that it might not have been constructed adequately. *Id.*

Court noted that "sloppy record keeping and short memories do not effectively *rebut allegations of actual notice* under the [GTLA]." ***Id.*** (emphasis added). In this case, there were no allegations of actual notice. The Zameks contended that the County had notice of a dangerous condition because it owned and maintained the road, and because a Highway Department Officer was familiar with the area because he lived nearby. Although a lack of any record of complaints does not conclusively establish a lack of notice, this immunity exception does not apply unless "constructive and/or actual notice to the governmental entity of such condition be alleged and proved." Tenn. Code Ann. § 29-20-203(b) (2000). If the plaintiff cannot or does not prove notice, his claim must fail. ***See Kirby v. Macon County***, 892 S.W.2d 403, 410 (Tenn. 1994); ***Dailey v. Bateman***, 937 S.W.2d 927, 931 (Tenn. Ct. App. 1996); ***Knight v. City of Gallatin***, No. 01A01-9705-CV-00213, slip op. at 4 (Tenn. Ct. App. W.S. Jan. 16, 1998). We find that the Zameks did not establish this essential element of their case, no genuine and material factual issue existed regarding notice, and the County was entitled to a judgment as a matter of law.

### B. Tenn. Code Ann. § 29-20-205 – Discretionary Functions

The second immunity exception that may apply to these facts is set out in Tenn. Code Ann. § 29-20-205 (2000). The statute provides:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of: (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused . . .

Although the Zameks' complaint only alleged that an unsafe condition existed under § 29-20-203, they repeatedly focused on the County Highway Department's decision not to close the "spur," and the County contended that its decision was protected under § 29-20-205. After the Zameks presented the affidavit of their expert, Dr. Stammer, they also alleged that "confusing signage and road markings" had contributed to the accident. We find it necessary to address the County's immunity under §29-20-205 as well.

Mr. Plunk, the TDOT Regional Construction Supervisor, stated in his affidavit that TDOT was responsible for the project involving the design and construction of the intersection and spur at issue. In addition, he noted that Madison County was not involved in the road project. Mr. Bowyer, the County Highway Department's Chief Administrative Officer, stated in his affidavit that the County had not altered the road design or traffic flow since the County regained control of the area. He explained that:

> Any decision to redesign, close, remove, or alter the traffic flow of a road would be a discretionary or planning decision and would take into account such issues as budgetary realities, safety concerns, and the allocation of county resources.
>
> . . . .

Madison County has not received any state aid funds for the repair or maintenance of the intersection of the subject matter roads since they were presented to Madison County.

In response to the Motion for Summary Judgment, the Zameks presented Dr. Stammer's affidavit and opinion about the intersection. He stated that the intersection was "dangerous, confusing, and negligently designed" and "deficient in geometric design." He went on to discuss the vehicle crossing patterns and problems created by leaving the spur road open.

Dr. Stammer also stated that "associated traffic control devices are questionable, confusing and some are clearly misplaced." In his opinion, the use of a yield sign for traffic turning left was dangerous.[3] He stated that "a more stringent stop sign would be better than a yield sign, [but] no sign should be expected to correct poor geometric design." He then explained that placing another stop sign so close to the 4-way stop could be problematic. Dr. Stammer also mentioned that "double yellow lines that extend too far, and faded stop lines at the nearby 4-way stop are examples of less than optimum traffic control devices." He added that the "double yellow lines . . . clearly extending into the intersection and overall 'weak' centerline stripping [sic] add to the confusion of motorists."[4]

Despite his previously mentioning the signs and stripes in the intersection, Dr. Stammer concluded that "the primary negligence of Madison County officials relates to their failure to eliminate completely the [spur]. This would have eliminated the unsafe and negligent conditions that existed on 12-04-03." He then suggested adding a turning lane to the intersection to avoid additional accidents that may occur.

As a result of Dr. Stammer's observations, the Zameks alleged that the County Highway Department was negligent in failing to close the spur road after the County regained control of the intersection, and they contended that the placement of inadequate signs and "weak" centerline striping contributed to the accident. The trial judge concluded that the County was immune from suit because its decisions were discretionary functions. He noted, "[w]hether we agree or an expert agrees with what the County did, they were discretionary functions . . . ."

In *Bowers by Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430 (Tenn. 1992), our Supreme Court adopted the "planning-operational test" for determining which activities are within

---

[3] The County had presented a portion of Mr. O'Donnell's deposition in which he acknowledged that he knew he had to yield to vehicles coming from the intersection, as Mr. Zamek was, before he could turn onto the spur.

[4] The County also presented Mr. Trosper's deposition testimony in which he stated that he did not know of any problems relating to the surface of the road as it related to the accident. Mrs. Trosper also agreed during her deposition that there were no problems with the road surface or the markings upon the roadway as it related to the accident.

the scope of the "discretionary function" exception. Under this test, "decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity." *Id.* The distinction between discretionary and operational acts depends on the type of decision being made and not on the mere identity of the decisionmaker. *Id.* at 430-31. "[D]iscretionary function immunity attaches to all conduct properly involving the balancing of policy considerations." *Id.* at 431. As such, "there may be occasions where an 'operational act' is entitled to immunity, where, for instance, the operational actor is properly charged with balancing policy considerations." *Id.*

Discretionary immunity does not attach to every act containing an element of choice or judgment, for every action involves discretion to some extent. *Bowers*, 826 S.W.2d at 431. The underlying policy of the immunity exception is better served by examining the decision-making process and the propriety of judicial review of the resulting decision. *Id.* By considering the factors that influence a decision, we can often discern whether it should be viewed as planning or operational. *Id.*

> If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the result is a planning decision. These decisions often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules.
>
> On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act.

*Bowers*, 826 S.W.2d at 431.

Discretionary immunity recognizes that the courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision, and therefore it allows the government to operate without undue interference by the courts. *Id.*

> [T]he judiciary confines itself ⋯ to adjudication of facts based on discernible objective standards of law. In the context of tort actions ⋯ these objective standards are notably lacking when the question is

-10-

> not negligence but social wisdom, not due care but political practicability, not [reasonableness] but economic expediency.

***Bowers***, 826 S.W.2d at 431 (citing *Peavler v. Bd. of Comm'rs*, 528 N.E.2d 40, 45 (Ind. 1988)). Decisions that involve the allocation of limited resources among competing needs do not need interference from the courts, absent clear guidance from the legislature to the contrary. ***Helton***, 922 S.W.2d at 887.

By way of illustration, a city's failure to install a traffic control device such as a sign is a discretionary function. ***See Butler v. City of Dyersburg***, 798 S.W.2d 776, 782 (Tenn. Ct. App. 1990); ***Mosley v. McCanless***, No. M2005-00145-COA-R3-CV, slip op. at 6 (Tenn. Ct. App. M.S. May 16, 2006). A decision on whether to create a special speed zone near a school is discretionary. ***Harris v. Williamson County***, 835 S.W.2d 588, 592 (Tenn. Ct. App. 1992). A decision not to install guardrails also falls within the discretionary function exception. ***Helton v. Knox County***, 922 S.W.2d 877, 887 (Tenn. 1996); ***Kirby v. Macon County***, 892 S.W.2d 403, 408 (Tenn. 1994). A city employee's initial setting of a traffic signal's yellow light interval, and his failure to later lengthen the time sequence for the yellow light, has been considered discretionary because it was based upon the exercise of professional judgment. ***Davis by Davis v. City of Cleveland***, 709 S.W.2d 613, 615 (Tenn. Ct. App. 1986). Whether or not to construct a drainage ditch alongside a road has also been construed as a discretionary function. ***Britton v. Claiborne County***, 898 S.W.2d 220, 223 (Tenn. Ct. App. 1994). And finally, we have determined that a decision to repave a road with one and a half inches of asphalt was the result of planning involving "official judgment, discretion, weighing of alternatives and public policy choices" and therefore entitled to discretionary immunity. ***Hutter v. City of Memphis***, No. 02A01-9507-CV-00156, slip op. at 6 (Tenn. Ct. App. W.S. Jan. 15, 1997). In these cases, the city or county's decision may not always appear to be the best alternative or solution to a problem. However, our role is not to reevaluate the numerous factors that go into an executive or legislative decision. The statute provides them with immunity in the "exercise or performance or the failure to exercise or perform a discretionary function, *whether or not the discretion is abused.*" Tenn. Code Ann. § 29-20-205(1) (2000) (emphasis added).

The following are examples of actions for which a city or county was not entitled to immunity because they constituted "operational" acts or omissions.[5] In ***Bowers***, where the Supreme Court first adopted the "planning-operational" test for discretionary functions, a school bus driver had been told to stop at a certain intersection, but a precise location for the stop had not been chosen.

---

[5] In some other cases in which a city or county's actions were considered operational, a manual had been adopted specifically setting out the procedures to be followed in certain situations, and the city or county had simply not followed the policies. *See, e.g.*, *Watts v. Robertson County*, 849 S.W.2d 798, 800 (Tenn. Ct. App. 1992). The key to such cases was that "a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act." *See id.* (citing *Bowers*, 826 S.W.2d at 431). There is no indication that Madison County has adopted such a manual controlling its actions in this case.

826 S.W.2d at 432. However, certain regulations had been set out by statute, in a driver's manual given to the city's school bus drivers, and in the board of education's policy statement. *Id.* Given the clear plans and policies that were in place, the driver's decision on exactly where to stop was held to be operational rather than discretionary. *Id.* In ***Kelley v. City of Rockwood***, No. 03A01-9704- CV- 00122, slip op. at 7-8 (Tenn. Ct. App. E.S. Oct.29, 1997), a city's failure to follow its own policy of cutting foliage away from signs twice per year was an operational omission rather than a discretionary function. The city had no decision to make regarding the action because it had already been made and the custom or policy was already in existence. *Id.* at 7.

In the case before us, the County's decisions not to close the spur road and not to change the signs that were in place were clearly planning-level, discretionary decisions. The Highway Department's choice on whether to close the spur would certainly require "consideration or debate by an individual or group charged with the formulation of plans or policies," which strongly suggests that a planning decision is involved. *See Bowers*, 826 S.W.2d at 431. The decision-making process would involve the weighing of various factors, the same as a decision not to install guardrails on a bridge. *See Helton*, 922 S.W.2d at 886-87; *Kirby*, 892 S.W.2d at 408. The Highway Department's Chief Officer explained in his affidavit that any decision to redesign or reroute the traffic flow would involve consideration of budgetary realities, safety concerns, and the allocation of county resources. Regarding the County's decision not to change the signs installed by TDOT, it is well-settled in Tennessee that a decision regarding whether to place a traffic control signal or device is a discretionary decision. *See Mosley v. McCanless*, No. M2005-00145-COA-R3-CV, slip op. at 4 (Tenn. Ct. App. M.S. May 16, 2006) (whether to install a stop sign or traffic light was discretionary); *Harris v. Williamson County*, 835 S.W.2d 588, 592-93 (Tenn. Ct. App. 1992) (failure to establish special speed zone near school was discretionary); *Butler v. City of Dyersburg*, 798 S.W.2d 776 (Tenn. Ct. App. 1990) (failure to put a stop sign at a "T-intersection" was discretionary); *O'Guin v. Corbin*, 777 S.W.2d 697, 701 (Tenn. Ct. App. 1989) (decision not to place a stop sign at an intersection was discretionary); *Davis by Davis v. City of Cleveland*, 709 S.W.2d 613, 615 (Tenn. Ct. App. 1986) (decision on how long light should remain yellow was discretionary). *See also Burgess v. Harley*, 934 S.W.2d 58, 63 (Tenn. Ct. App. 1996).

Again, the statute provides that governmental entities are immune from suit for "an injury proximately caused by a negligent *act or omission* of any employee within the scope of his employment" when the injury "*arises out of*: (1) the *exercise or performance or the failure to exercise or perform* a discretionary function . . . ." Tenn. Code Ann. § 29-20-205 (2000) (emphasis added). This language encompasses both misfeasance and nonfeasance. *Butler*, 798 S.W.2d at 782. Thus, the County's failure to change the layout of the road or to change the signs would be protected by discretionary immunity. The statute goes on to provide that immunity applies "whether or not the discretion is abused," and therefore we will not reweigh the factors that bear on these decisions to determine the social wisdom of the County's choices.

The Zameks' remaining allegation that the intersection's center lines were "weak" presents a closer question. It appears that they were indirectly alleging that the County was negligent in failing to restripe the road. Although no Tennessee cases have directly addressed whether this type of action is "discretionary" or "operational," cases in other jurisdictions have split on the question. *See Guerrero ex rel. Guerrero v. Alaska Hous. Fin. Corp.*, 123 P.3d 966, 981 (Alaska 2005) (whether to paint lane markings is an operational decision); *Rogers v. State*, 51 Haw. 293, 297, 459 P.2d 378, 381 (Haw. 1969) (which center line stripings to repaint and when to repaint them are operational decisions). *But see Bruegl v. Estate of Duryee*, 166 Wis.2d 3, 3, 480 N.W.2d 569 (Wis. Ct. App. 1991) (matters involving painting the road are discretionary); *Kunzman v. City of Cuyahoga Falls*, No. 14055, 1989 WL 106573, at *3 (Ohio Ct. App. 1989) (county had discretion as to whether or not to stripe a road). We note that in *Guerrero* and *Rogers*, the Supreme Courts of Alaska and Hawaii also held that the placement of road signs are operational acts, a conclusion not reached in Tennessee cases. *Guerrero*, 123 P.3d at 982; *Rogers*, 459 P.2d at 381.

The parties have only cited one Tennessee case dealing with the striping of roads. In *Swafford v. City of Chattanooga*, 743 S.W.2d 174, 175 (Tenn. Ct. App. 1987), the City had decided to widen a busy street to include two lanes in each direction and a turning lane in the center. After adding the additional lane, the City allowed traffic to use the street before it had painted the lines designating the new middle lane as a turning lane. *Id.* An accident occurred while a truck was stopped in the unmarked turning lane waiting to turn left. *Id.* at 176. On appeal, the Court found that the trial court had based its award on §29-20-203 for unsafe streets of which the City had notice. *Id.* at 177. However, the Court noted that *even if* the case were brought under §29-20-205, it would not have considered the City's actions to have been discretionary. *Id.* In a later case, we summarized *Swafford* as a situation in which "the City had *exercised its discretion in deciding to paint the stripes*, but had negligently failed to complete the job." *Butler v. City of Dyersburg*, 798 S.W.2d 776, 782 (Tenn. Ct. App. 1990) (emphasis added).

We agree with the characterization in *Butler* and believe that a County's decision to paint or repaint road stripes would be a discretionary or planning function. There appears to be no preexisting regulation or standard for restriping the road so that the County would be implementing a decision already made. This type of decision would involve the balancing of various factors by the Highway Department, and it would likely result from "assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules." *Bowers*, 826 S.W.2d at 431. After mentioning the County's "budgetary realities," the Highway Department's Chief Officer mentioned in his affidavit that the County had not received any state aid funds for the repair or maintenance of the intersection. We reiterate that decisions involving the allocation of limited resources among competing needs do not need interference from the judiciary. *Helton*, 922 S.W.2d at 887. The question of where and when to restripe the roads should be answered by the County Highway Department, not by the courts.

In sum, we agree with the trial court's decision that each of the acts complained of by the Zameks constituted discretionary functions for which the County was immune. Because the County's immunity had not been removed under §29-20-203 or §29-20-205(1), the trial court properly granted summary judgment to the County. It is not necessary to address the County's alternative argument that Mr. Zamek's injuries were proximately caused by the negligence of Mr. O'Donnell.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to Appellants, Seth and Jennie Zamek, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE